**Jeum Chul PARK, et al., Appellants,**

v.

**SANDWICH CHEF, INC. and Papadopoulos Properties, Inc., Appellees.**

No. 93–CV–1381.

District of Columbia Court of Appeals.

Submitted Nov. 16, 1994.

Decided Dec. 22, 1994.

Paul S. Blumenthal, Washington, DC, for appellants.

Mitchell B. Weitzman, Washington, DC, for appellee Sandwich Chef, Inc.

Robert E. Steinberg, Washington, DC, for appellee Papadopoulos Properties, Inc.

Before FERREN and SCHWELB, Associate Judges, and BELSON, Senior Judge.

SCHWELB, Associate Judge:

Appellants Jeum Chul Park and her daughter, Hyun Park, plaintiffs below, appeal from the trial court's award of counsel fees as sanctions for alleged violations of Super.Ct.Civ.R. 11. They claim that there was no evidentiary basis for the imposition of sanctions and that the trial judge's findings were legally insufficient. We reject the first contention but agree in part with the second. Accordingly, we vacate the award and remand for further proceedings.

## I.

In a complaint filed on February 14, 1992, the Parks alleged that in August 1991, they approached Tom Papadopoulos, a business broker who is the principal of appellee Papadopoulos Properties, Inc., for the purpose of negotiating the purchase of the Wall Street Deli, an enterprise located in Georgetown Park Mall and owned and operated by appellee Sandwich Chef, Inc. It appears that Jeum Chul Park's sister was employed at the Papadopoulos firm and was aware that the Wall Street Deli was for sale.

Papadopoulos prepared a "form" business sale and purchase agreement in which the terms of the proposed purchase were spelled out. The Parks alleged in their complaint that Hyun Park signed the agreement, but that her mother initialed it but did not sign it. Pursuant to the terms of the agreement, Hyun Park gave Papadopoulos a check in the amount of $15,000 as the stipulated deposit. The agreement provided that in the event of a breach by the purchasers, the $15,000 would represent liquidated damages to the seller.

The Parks further alleged that on November 1, 1991, they learned that the landlord of Georgetown Park Mall was contemplating the development of a food court in the Mall. They claimed that such a food court "would have resulted in a financial detriment to [them]." They alleged that the proposal to develop the food court "was known to Sandwich [Chef] and was a major factor in its decision to sell the Wall Street Deli." The Parks claimed that they had demanded that their deposit be returned, but that the defendants had rejected their demand.

In their complaint, the Parks asserted two principal grounds for recovery. They first claimed that the agreement to purchase was *"nudum pactum"* and invalid because Jeum Chul Park never signed it. Their second theory, purportedly sounding in "misrepresentation," was that

> throughout the negotiations for the purchase of the business Sandwich [Chef] failed to disclose a material factor in the negotiations by withholding the fact that Georgetown Park Mall was contemplating adding a food court next to The Wall Street Deli ... [The] Parks learned subsequent to Hyun Park's signing of the agreement that Defendants intentionally withheld from them the fact that Georgetown Park Mall was contemplating adding a food court ... By reason of the above actions of Defendants, Parks have been damaged in the sum of Fifteen Thousand Dollars ($15,000).

Complaint, paras. 19–21 (paragraphs combined and paragraph numbers omitted). The plaintiffs prayed for compensatory damages in the amount of $25,000, punitive damages,

and counsel fees.[1]

Each defendant filed an Answer and Counterclaim, denied wrongdoing, and cross-claimed against the other defendant. On March 16 and 17, 1993, the case came on for a non-jury trial. Both of the Parks testified, and their counsel called several other witnesses. Jeum Chul Park denied that she signed the agreement, and both plaintiffs claimed essentially that they did not understand the documents which had been presented to them and that they had not intended to commit themselves to a final agreement.[2] Their counsel did not call as a witness Jeum Chul Park's sister, who had been present at some of the negotiations with Papadopoulos, and he adduced no expert testimony to support their apparent claim that Jeum Chul Park's purported signature on the agreement was a forgery.

At the conclusion of the plaintiffs' case, the trial judge entered judgment in favor of both defendants. He found that, so far as he could determine, Jeum Chul Park's alleged signature on the agreement was in the same handwriting as other documents written by her. The judge held that there was a valid contract which had been breached by the Parks, and that the Parks

> didn't investigate adequately first ...
> [T]hen, after getting in and investigating further, they found that the deli might not have been as promising as they thought it was, and decided they wanted to back out at that point.

The judge did not expressly address the Parks' claim of misrepresentation, but he explicitly declined to credit the testimony of Jeum Chul Park that she did not understand what was going on, noting that she had extensive business experience, and that she "would not have been as naive and [would not have been] led to the slaughter like an innocent sheep." The judge ruled that, in conformity with a provision in the agreement, the Parks had forfeited the $15,000 deposit.

## II.

After their victory at trial, the defendants filed separate motions for sanctions pursuant to Super.Ct.Civ.R. 11. Counsel for the plaintiffs filed an opposition. Unfortunately, the opposition contained a typographical error in the Civil Action Number, and it was initially filed in the wrong case file.

On May 26, 1993, not having received the plaintiffs' opposition, and believing the defendants' motions to be unopposed, the judge issued a brief memorandum and order granting the motions and directing counsel to itemize their expenses and counsel fees. Citing *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990), the judge

> fully agree[d] with the representations made in the motions by the defendants that this is a case that should never have been brought and that the representations made by the plaintiffs were, to be charitable, not in accord with the facts as ultimately developed in the plaintiffs' case-in-chief.

On June 4, 1993, after the plaintiffs' opposition had been brought to his attention, the judge issued an amended order in which he elaborated, in pertinent part, as follows:

> This court still remains disturbed by the fact that the plaintiffs did not produce the relative of the plaintiff associated with the Papadopoulos firm to provide some further insight into the initial negotiations and representations made to the daughter, nor did plaintiff see fit to provide any expert witness to show that Jeum Chul Park's signature was not in fact her signature. In civil cases, the burden of proof rests upon the plaintiff to establish his or her claim, and not on the defendant to disprove a contention.... Further, it was incumbent upon the purchasers to make their own independent inquiry as to the prospects of another

---

1. The complaint also alleged, *inter alia,* that Sandwich Chef violated its obligations under the agreement by never giving the Parks an accounting of the register tapes reflecting minimum gross sales of $10,000 a week. Hyun Park acknowledged at her deposition and at trial that she was shown the information but complained that she was not permitted to bring the tapes home to show her mother.

2. Jeum Chul Park claimed that she understood little English. Hyun Park asserted that she had no business experience.

Food Court store being located in the Mall which would be a potential competitor. The failure of the relative or any other agent of Papadopoulos Properties, Inc. to volunteer any comment one way or the other, in this Court's view, would not constitute actionable civil fraud or be a misrepresentation by omission. This Court remains convince[d] that counsel did not make an adequate Rule 11 factual inquiry of his client and the critical witnesses which would have supported his clients' claim before filing the complaint and pursuing this claim. This Court also remains convinced, from observing the plaintiffs as witnesses in the actual trial from their total demeanor and deportment in the courtroom, that they were far more sophisticated than they wanted this Court to believe.

The attorneys for the defendants filed submissions detailing their legal fees and expenses. On August 30, 1993, the judge awarded Papadopoulos $7,350.29 and Sandwich Chef $11,760.88 against the named plaintiffs. This appeal followed.

### III.

Rule 11 of the Superior Court's Civil Rules provides in pertinent part as follows:

The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

We recently stated that

Rule 11 sanctions are not to be imposed simply because the allegations in the challenged pleading are found wanting. A signer's failure to make a reasonable factual inquiry must be a flagrant one before sanctions are warranted.... Rule 11 is violated only when it is patently clear that a claim has absolutely no chance of success.

*Gray v. Washington,* 612 A.2d 839, 841–42 (D.C.1992) (citations and internal quotation marks omitted).

The Parks contend that the defendants failed to establish any facts that would support the imposition of Rule 11 sanctions. They contend that they and their counsel acted in good faith, and that the parties "had a real dispute on which neither side could find a compromise prior to the filing of the action." But "the test under Rule 11 is not good faith, but reasonable inquiry." *Kennedy v. District of Columbia,* Nos. 91–CV–1503 & 91–CV–1504, slip op. at 21, 1994 WL 499573 at *11 (D.C. Sept. 12, 1994). Moreover, the Parks effectively alleged in their complaint that the defendants forged Jeum Chul Park's signature on the agreement. If the judge, who had the opportunity to observe the demeanor of the witnesses, believed that the plaintiffs made this allegation knowing it to be false, then he was confronted with a classic violation of Rule 11. *Cf. Eastway Constr. Corp. v. City of New York,* 637 F.Supp. 558, 569–70 (E.D.N.Y.1986), *modified,* 821 F.2d 121 (2d Cir.), *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).

Moreover, we are aware of no authority which would support the Parks' purported misrepresentation count, in which they essentially claimed that the defendants were required to disclose, on their own initiative and without any inquiry from the Parks, the possibility that a food court might come to Georgetown Park Mall. In *Hercules & Co. v. Shama Restaurant Corp.,* 613 A.2d 916 (D.C. 1992), we had occasion to set out the standard applicable to an allegation of fraud in the inducement, which is the essence of the Parks' claim here:

At common law, the requisite elements of fraud were (1) a false representation (2) made in reference to a material fact, (3) with knowledge of its falsity, (4) with the intent to deceive, and (5) an action that is taken in reliance upon the representation ... At least in cases involving commercial contracts negotiated at arm's length, there is the further requirement (6) that the defrauded party's reliance be *reasonable.*

*Id.* at 923 (emphasis in original) (citations omitted). In the present case, there is no claim that the defendants made any representations whatever on the subject of a food court, and none of the six elements was established or even fairly alleged.

■ The only authority cited by the Parks in support of their "misrepresentation by nondisclosure" theory is *Equitable Life Ins. Co. of Iowa v. Halsey, Stuart & Co.,* 312 U.S. 410, 61 S.Ct. 623, 85 L.Ed. 920 (1941). In that case, the Supreme Court, relying on § 529 of the Restatement of Torts, recognized that

> [a] statement in a business transaction which, while stating the truth so far as it goes, the maker knows or believes to be materially misleading because of his failure to state qualifying matter is a fraudulent misrepresentation. Such a statement of a half truth is as much a misrepresentation as if the facts stated were untrue.

*Id.* at 425–26, 61 S.Ct. at 630 (internal quotation marks omitted). In the present case, however, the Parks failed either to allege in their complaint or to prove at trial any statement by either defendant which could plausibly be characterized as a half-truth,[3] and they can find no solace in *Equitable Life.*

We pointed out in *Green v. Louis Fireison & Assocs.,* 618 A.2d 185 (D.C.1992), that

> Rule 11 is not violated solely because a particular pleading is not warranted by existing law. If such pleading can be justified by a good faith argument for the extension, modification, or reversal of existing law, sanctions are not in order.

*Id.* at 188–89. In the absence of more precise findings by the trial court, we do not decide whether the Parks' "misrepresentation by omission" theory was sufficiently extravagant to support Rule 11 sanctions. We do note, however, that the prospects of success on such a claim were negligible at best. Because the Parks' lawsuit rested on this theory and on the now-discredited allegation of forgery, we discern merit in the judge's view that the action ought not to have been brought.

## IV.

■ In general, the trial court's disposition of a Rule 11 motion is reviewed for abuse of discretion. *Cooter & Gell, supra,* 496 U.S. at 400–05, 110 S.Ct. at 2458–61; *Gray, supra,* 612 A.2d at 842.[4] "Judicial discretion must, however, be founded upon correct legal principles." *Martin v. United States,* 606 A.2d 120, 132 (D.C.1991); *see also Link v. District of Columbia,* 650 A.2d 929, 934 (D.C.1994).

■ In the present case, the judge based his determination that the Parks had violated Rule 11 largely on their failure to prove their case at trial. He noted that they did not call Jeum Chul Park's sister as a witness or introduce expert testimony on the question whether Jeum Chul Park wrote the signature

---

**3.** A plaintiff alleging fraud "must do so with particularity and must prove it by clear and convincing evidence." *Hercules & Co., supra,* 613 A.2d at 923; *see* Super.Ct.Civ.R. 9(b). The Parks' misrepresentation count was at least arguably subject to a motion to strike on the ground that it failed to state a claim upon which relief may be granted.

**4.** In *Montgomery v. Jimmy's Tire & Auto Center, Inc.,* 566 A.2d 1025 (D.C.1989), we held that the abuse of discretion standard applies generally, but that "a decision on whether a paper was supported by law or [by] a good-faith argument for a change in the law is subject to *de novo* review because the issue is strictly one of law." *Id.* at 1029 (citing *Westmoreland v. CBS, Inc.,* 248 U.S.App.D.C. 255, 261–62, 770 F.2d 1168, 1174–75 (1985)). We stated that "we will construe the local rule in a manner consistent with the federal rule to the extent possible under binding precedent, and we will look to federal court decisions interpreting the federal rule as persuasive authority in interpreting the local rule." *Id.* at 1027 (citations omitted). The following year, in *Cooter & Gell, supra,* the Supreme Court held that the determination whether a pleading was supported by a good-faith argument for a change in the law often raises issues as to the signer's credibility and as to his or her exercise of due care, that the trial court is better situated than the appellate court "to marshal the pertinent facts and apply the fact-dependent legal standard mandated by Rule 11," and that such a determination is therefore also to be reviewed solely for abuse of discretion. 496 U.S. at 402, 110 S.Ct. at 2459. We need not decide the thorny question whether the Supreme Court's interpretation of F.R.Civ.P. 11 in *Cooter & Gell* supersedes this court's interpretation of Super.Ct.Civ.R. 11 in *Montgomery,* for a remand is necessary even under *Cooter & Gell's* more deferential standard.

which appeared on the agreement. The judge also commented on the Parks' courtroom demeanor without explicitly tying this factor in to the veracity or lack thereof of their pleadings. The judge found that "counsel did not make an adequate Rule 11 factual inquiry of his client" and of supporting witnesses, but he did not identify the issue or issues on which counsel's inquiry was inadequate. In addition, without discussing the point, he imposed sanctions on the Parks, but not on their attorney.

■ "Under Rule 11, papers must not be viewed with 20/20 hindsight." *Montgomery, supra* note 4, 566 A.2d at 1029. "It is one thing to conclude that [the Parks] lost at trial because [they] failed to prove [their allegations], but quite another to say that those [allegations] could not be supported by facts pleaded in ... papers which were signed by [them]." *Id.* The trial judge should "test the signer's conduct by inquiring what was reasonable to believe *at the time the pleading, motion, or other paper was submitted.*" *Kleiman v. Aetna Casualty & Surety Co.,* 581 A.2d 1263, 1266 (D.C.1990) (emphasis added) (quoting F.R.Civ.P. 11, Advisory Committee Note).

■ This is not to say that the Parks' failure to prove their allegations is irrelevant to the Rule 11 issue. On the contrary, such failure may well shed light on the nature of the pre-filing inquiry which they and their counsel made, and on the *bona fides* or lack thereof of their allegation of forgery. The court's inquiry, however, must be focused on pre-filing conduct. Although the trial judge may well have intended such a focus, we cannot assume that he did so, for his discussion was almost entirely centered on the burden of proof and the Parks' failure to meet it, and he made no explicit findings as to the precise inquiry that should have been made, and as to whose responsibility it was to make it. *See Stansel v. American Sec. Bank,* 547 A.2d 990, 996 (D.C.1988). A trial court's imposition of sanctions cannot be sustained "unless the court makes findings on all the relevant issues stated in Rule 11."

*Green, supra,* 618 A.2d at 189 (citations omitted).

Finally, as we have noted, the judge appears to have found that the Parks' *attorney* failed to make an appropriate inquiry, but his order requires only the attorney's *clients* to pay all of the defendant's expenses and counsel fees. As noted in a leading commentary,

[t]he court's discretion includes the power to impose sanctions on the client alone, solely on the counsel, or on both. This is desirable because there are circumstances in which one of these actions is more appropriate than the other two. For example, when the offending conduct relates to work that lies within the supposed competence of counsel, especially when it is beyond the understanding of the client, or the client is unaware of the attorney's wrongful conduct, it is the former who should be sanctioned, not the latter. Conversely, sanctions that are attributable to misrepresentations by the client reasonably relied upon by an attorney should fall on the client rather than counsel. But, as the Eleventh Circuit has said, "fining a represented party is a very severe sanction that should be imposed with sensitivity to the facts of the case and to the party's financial situation."

5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE, § 1336, at 102–04 (1990) (footnotes omitted). There is no indication that the judge ever exercised his discretion with respect to this issue.[5]

## V.

For the foregoing reasons, the order awarding sanctions is hereby vacated, and the case is remanded to the trial court for further proceedings consistent with this opinion.

*So ordered.*

5. We note that in any proceeding on remand relating to whether any sanctions should be imposed against the Parks' attorney rather than against his clients, there may well be a conflict of interest in the continuation of his representation of them.