**Maria Teresa ESTEVES, Appellant,**

v.

**Antonio Goncalves ESTEVES, Appellee.**

**No. 95–FM–1033.**

District of Columbia Court of Appeals.

Argued April 17, 1996.

Decided July 11, 1996.

---

Andrew Philip McGuire, for appellant.

Stephen L. Bluestone, Bethesda, MD, for appellee.

Before KING, RUIZ, and REID, Associate Judges.

REID, Associate Judge:

Appellant Maria Esteves appeals from decisions and orders of the trial court which (1) on the day of trial, allowed her counsel to withdraw from representing her with respect to a fraud complaint against her former husband, (2) denied her a continuance of the trial, and (3) imposed discovery and Rule 11 sanctions on her but not on her attorney. She also complains that the court violated her due process rights by not asking if she needed an interpreter. We affirm in part, and vacate and remand in part.

## FACTUAL SUMMARY

Appellant Maria Esteves and appellee Antonio Esteves lived together as husband and wife for approximately sixteen years. In early 1989 they separated, and Ms. Esteves was awarded an absolute divorce on June 18, 1990. The Separation and Property Settlement Agreement which the parties had executed was incorporated into the divorce decree. On May 20, 1994, Ms. Esteves filed a complaint to set aside a property settlement agreement on the basis of fraud. As a result of a trial court order, Ms. Esteves filed an amended complaint on October 3, 1994. The gravamen of Ms. Esteves' complaint appears to be that Mr. Esteves did not reveal all of his assets prior to the execution of their settlement agreement, as evidenced by his cash payment of one-hundred thousand dollars as a downpayment on the purchase of a house in April 1991 and his alleged gift to a girlfriend of forty-eight thousand dollars. Mr. Esteves, a contractor, denied the allegations.

On January 30, 1995, at a pre-trial conference, the parties were informed that trial was scheduled for April 13, 1995. On April 4, 1995, Ms. Esteves alerted Mr. Esteves to plans to take his deposition, and issued a deposition notice to Mr. Esteves on April 6, 1995, requesting that he appear for deposition before April 13. In response, Mr. Esteves moved for a protective order to avoid a deposition on the eve of trial. Ms. Esteves then moved for a continuance so that she could take Mr. Esteves' deposition.

■ On April 13, 1995, the trial judge engaged in an extensive on the record discussion with counsel after concluding that Ms. Esteves was not ready to proceed to trial. Among the topics addressed were (1) Ms. Esteves' need for discovery and the potential consequences of her violation of discovery rules; (2) the protective order requested by Mr. Esteves; and (3) the nature of Ms. Esteves' amended complaint. During the discussion, Ms. Esteves' counsel stated in part:

> I am trying to overturn a settlement agreement that the parties entered into. Your Honor, I don't think I give up anything in my case to say it's an uphill battle to win such a case.... I clearly survived motions to dismiss, but I don't have the strongest case. And there were discussions about a settlement offer to be made to my client along a more nominal type of settlement offer to be made.[1]

In granting Ms. Esteves' motion for continuance the trial judge stated, *inter alia:*

> I think the case cannot be tried today because I think the plaintiff does not have the kind of evidence that he believes, or she believes, would persuade the finder of fact to rule in their favor without knowing

more.... It is at best unwise to go forward with trial without a deposition of the defendant.... Because with fraud ... there is an element of intent, scienter. And while any party in any case, criminal or civil, can prove scienter circumstantially, it's easier to prove it through the party's own words.

The trial judge issued an order dated April 25, 1995, in which he confirmed the grant of a continuance, but also clearly stated that Ms. Esteves had violated the discovery rules by waiting too long to notice Mr. Esteves' deposition:

> The Court finds that Plaintiff is not ready to go to trial without the information sought in her Notice of Deposition of April 6, 1995 and it would be unwise for Plaintiff to go forward without Defendant's deposition. However, it was inappropriate to wait until April 6, 1995 to serve her Notice of Deposition in consideration of the fact that the parties were before this [C]ourt on January 30, 1995 for a status conference, and with a trial date scheduled for April 13, 1995.... The Court further finds that there exists a discovery violation by Plaintiff in her untimely notice of deposition....

Accordingly, the trial judge, *inter alia,* (1) ordered Ms. Esteves to pay to Mr. Esteves costs and fees relating to his opposition to the notice of deposition and request for a continuance and to defense counsel's appearance and preparation for the April 13, 1995, trial; (2) ruled that if Mr. Esteves prevailed on the merits of Ms. Esteves' claim he would be entitled to receive additional costs and fees; and (3) set a new trial date of June 13, 1995.

---

1. The major hurdle confronting Ms. Esteves in this case was the lack of any credible evidence of fraud. That was clear on April 13, as manifested by her own counsel's comments on the case, quoted above. The record on appeal is devoid of evidence manifesting fraud in Mr. Esteves' negotiation and execution of the separation and property settlement agreement. Ms. Esteves had the burden to prove fraud by clear and convincing evidence. *See Hercules & Co., Ltd. v. Shama Restaurant Corp.,* 613 A.2d 916, 923 (D.C.1992) (citing *Bennett v. Kiggins,* 377 A.2d 57, 59 (D.C. 1977), *cert. denied,* 434 U.S. 1034, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978)). She was required to prove all of the elements of fraud: (1) a false representation; (2) made in reference to a material fact; (3) with knowledge of its falsity; (4) with the intent to deceive; and (5) an action that is taken in reliance upon the representation. *Id.* At most the record shows speculation and conjecture that Mr. Esteves had failed to disclose all of his assets when the agreement was under consideration, not clear and convincing proof. Moreover, Mr. Esteves proffered proof as to why he had money nine months after the settlement agreement to make the down payment in case. *See* n. 3, *infra.*

On June 13, 1995, when the parties appeared for trial, Ms. Esteves' counsel announced that he had a motion to withdraw as counsel. The motion had not been duly filed but was dated June 9, 1995. Attached to the motion was a consent to withdraw document signed by Ms. Esteves. On the consent form, Ms. Esteves states, *inter alia,* that (1) she was advised in May 1995 that counsel would withdraw; (2) she received the written notice of withdrawal on June 9, 1995; and (3) she understood that the trial was scheduled to proceed on June 13, 1995. The trial judge accepted the motion to withdraw for filing. Ms. Esteves raised no objection to the withdrawal of her counsel, but asked for a continuance. There was no explicit oral discussion regarding the "irreconcilable differences" between Ms. Esteves and her counsel. Nor did Ms. Esteves mention any efforts to find new counsel. After being reminded of his April 13, 1995, discussion with the parties, the trial judge granted the motion to withdraw. In response to the trial judge's question concerning whether Mr. Esteves' deposition had taken place, counsel for Mr. Esteves stated: "No. Absolutely no discovery went forward." The trial judge further indicated that his consent to Mr. Kaufman's withdrawal was conditioned on no further continuance of the trial. He also expressed the view that the case should be dismissed for want of prosecution. The trial judge then refreshed his recollection as to the merits of the case and said: "I now remember it.... I will deny the motion for a continuance." In addition, he once again granted Mr. Kaufman's motion to withdraw as Ms. Esteves' attorney.

At that point, Mr. Kaufman stated: "Your Honor, on behalf of my client, I'm not necessarily certain she understands the complexities of all the issues involved here." The trial judge responded: "I'm quite sure she doesn't." The trial judge went on to remind Mr. Kaufman of the discussion at the April 1995 proceeding regarding both the need for taking the deposition of Mr. Esteves before trial, and the risk that Ms. Esteves' loss would result in "somebody's" payment of Mr. Esteves' legal fees. Mr. Kaufman commented that Ms. Esteves did not comprehend the risk of somebody having to pay the attorney's fees and that was "in large part the reason for [his] withdrawal in this matter."

After Mr. Kaufman left the courtroom, the trial judge asked Ms. Esteves: "Do you want to just start the trial right this minute? Or do you want to take a break for 15 minutes or half an hour to decide how you're going to handle this"? Ms. Esteves responded: "I'd like to have a lawyer because—[.]" The trial judge cut her off, denied her request and also denied her repeated request for a continuance.

After a fifteen minute recess, the trial proceeded with Ms. Esteves acting *pro se.* During her direct examination by the trial judge, Ms. Esteves said: "The problem is I don't read very well English. That's why I need a lawyer." Through direct examination, the trial judge established that Ms. Esteves (1) signed the settlement agreement with Mr. Esteves on May 22, 1990; (2) accused him of giving forty-eight thousand dollars to his girlfriend[2]; (3) accused him of fraud because of his one-hundred thousand dollars cash downpayment on a house nine months after the settlement agreement was executed;[3] and (4) received two houses on

---

**2.** The following exchange took place regarding the forty-eight thousand dollars:

Q. You have something that he gave forty-eight thousand dollars to his girlfriend?
A. For the girlfriend, yes.
Q. Where? Where is it? What kind of paper would that be?
A. Well, I don't have it here, but I show it to you one day. If you want, I send it in the mail for you. You see.
Q. This happened before the agreement?
A. Before the agreement....
Q. That's not fraud. I don't know what that is. So he gave forty-eight thousand dollars to his girlfriend?

A. For his girlfriend.

**3.** On August 27, 1993, Mr. Esteves' counsel sent a letter to Ms. Esteves' counsel detailing possible sources for his 1991 one-hundred thousand dollars downpayment on a house. These sources included a March 3, 1989, contract with a homeowner for the construction of an addition to her home at a contract price of $233,000 with a payment schedule running from October 1989 to March 1990; and bank statements dated 6/4/90, 4/91, and 5/91. The letter also mentioned a 1993 contract with International Wholesalers Corp. for $165,000.

Fessenden Street, N.W., one house on Capitol Hill, one of two joint bank accounts, and other bank accounts in this country and abroad as part of the settlement agreement.[4]

Ms. Esteves and the trial judge both questioned Mr. Esteves. He denied giving his girlfriend (who later became his wife) forty-eight thousand dollars. With regard to the one-hundred thousand dollars cash payment on the house, Mr. Esteves testified that he had forty-eight thousand dollars in a bank account as indicated in the settlement agreement, and obtained the remainder of the money by working.

At the close of the testimony, Mr. Esteves moved for judgment on the ground that "plaintiff has set forth no credible evidence relating in any way to any of the elements of fraud" and introduced "no evidence of any damages she claims to have suffered as a result of relying upon fraud." When the trial judge asked Ms. Esteves for her argument, and whether she wanted to "add anything to what [she] already said," she responded by making accusations against Mr. Esteves.[5] The trial judge granted the motion. He concluded that Ms. Esteves' testimony was based on hearsay, and, even if true could not form the basis of a fraud action. Both parties received houses and bank accounts under the settlement agreement, but the agreement did not specify how much money was in any account. Neither party was left in a condition of poverty. Accordingly, the trial judge stated: "The short of all of this is that there is no evidence of fraud supporting this contract or being the basis of this contract or any provision in it." Furthermore, consistent with his April 25, 1994, order, the trial court awarded costs and fees to Mr. Esteves.

The trial court memorialized its oral order in a written order dated June 20, 1995. Ms. Esteves' July 18, 1995 motion under Super. Ct. Civ. R. 60(b) was denied. She alleged prejudicial error in the trial court's denial of her request for a continuance and the grant of her attorney's motion to withdraw on the day of trial. In addition she alleged a violation of her due process rights in that the trial court failed to assign an interpreter to her.[6] After Ms. Esteves noted her appeal, the trial judge declined to rule on her motion. His reason was that under *Smith v. Pollin,* 90 U.S.App. D.C. 178, 194 F.2d 349 (1952) the trial court's jurisdiction ended when Ms. Esteves filed her notice of appeal.

## ANALYSIS

### The Motion to Withdraw

 Ms. Esteves contends that the trial court abused its discretion in allowing her counsel to withdraw on the day of trial. The trial court permitted counsel for Ms. Esteves to file his motion to withdraw with the court on the day of trial, and immediately granted it without any extensive inquiry into the reasons for the withdrawal. We have previously stated that: "The decision to grant or deny a motion by an attorney to withdraw as counsel is committed to the discretion of the trial court." *Crane v. Crane,* 657 A.2d 312, 318 (D.C.1995) (referencing *Atlantic Petroleum Corp. v. Jackson Oil Co.,* 572 A.2d 469, 474 (D.C.1990)). Generally, "in the absence of substantial prejudice to [plaintiff] and unnecessary delay, [an attorney] should be allowed to withdraw should the court conclude that there has been a *complete breakdown* in the attorney-client relationship." *Atlantic Petroleum Corp., supra,* 572 A.2d at 473 (quoting *Blessing v. Dow Chemical Co.,* 521 A.2d

---

**4.** Mr. Esteves received one house in Portugal, two houses in the United States, and bank accounts in this country and abroad.

**5.** Ms. Esteves stated:
I come here only for the money.... I only complain because all the money go away. My children say this to me. And they not happy what he do to us. That's why I come. And they say to me you better go to Court because he lies to you. They know I work hard. Seven o'clock he's still asleep. And I come in at 1:00 in the morning, he's asleep. And I'm the one

who works. He breaks his leg—going to the hospital. I'm the one who pay the bills and work. And my children, they are the witness. And he get out with the girlfriend and take all the money. We don't mind if he goes out with the girlfriend. But be honest. Give the money don't belongs to him.

**6.** Ms. Esteves was born in Portugal and lived in Brazil before coming to the United States. However, she has lived in this country for a number of years.

1176, 1180 (Me.1987)). *See also* Super. Ct. Dom. Rel. R. 101(c)(5) which provides that: "The Court may deny an attorney's motion for leave to withdraw if the attorney's withdrawal would unduly delay trial of the case, be unduly prejudicial to any party, or otherwise not be in the interests of justice." Furthermore, a trial judge must "assure that there [is] in the record sufficient evidence to reveal the type of total breakdown in the attorney/client relationship that would justify, in effect, dismissal of plaintiff's lawsuit." *Atlantic Petroleum Corp., supra,* 572 A.2d at 472.

■ Counsel for Ms. Esteves advised her in May 1995 that he would have to withdraw from the case. He also advised opposing counsel of his intent to file the motion. In his motion he stated:

> Irreconcilable differences have arisen between [Ms. Esteves], and her counsel Robert P. Kaufman. The parties['] differences of opinion and inability to communicate concerning this case have become so severe that counsel can no longer represent plaintiff. Counsel is unable to proceed with this case in the manner plaintiff requests.

By consenting to Mr. Kaufman's withdrawal, Ms. Esteves agreed that there were irreconcilable differences between attorney and client. Despite her consent to her counsel's withdrawal, the June 13, 1995, trial transcript clearly reveals that Ms. Esteves did not wish to proceed without a lawyer because she generally did not understand the language in legal documents.

The pivotal question is whether allowing her counsel to withdraw on the day of trial, especially when a request for a continuance was denied, unduly prejudiced Ms. Esteves, or was not in the interests of justice. This question must be answered in the context of the January 30, 1995, pre-trial conference, the April 13 and June 13 proceedings, and the substance of Ms. Esteves' claim against Mr. Esteves.

Ms. Esteves filed her complaint on May 20, 1994, almost four years after she was granted an absolute divorce from Mr. Esteves. She filed an amended complaint on October 3, 1994. The gravamen of Ms. Esteves' complaint is that Mr. Esteves engaged in fraud during the negotiation and execution of their separation and property settlement agreement because he failed to disclose all of his assets, as evidenced by his alleged gift of forty-eight thousand dollars to his girlfriend and a one-hundred thousand dollars cash downpayment on a house in April 1991. The initial trial date in this case was April 13, 1995. However, after extensive discussion on the record, the trial judge reluctantly, and over the vigorous objection of defense counsel, continued the trial date to June 13 because Ms. Esteves had failed to take Mr. Esteves' deposition during the discovery period.

When the parties appeared for trial on June 13, Mr. Esteves' deposition still had not been scheduled, in spite of the April 13 continuance for that purpose. No reason for the failure to take the deposition was given. There is nothing in the record to show that Mr. Esteves was uncooperative. In addition, since Mr. Kaufman informed her in May of his plan to withdraw as her counsel, Ms. Esteves' own inaction in seeking other counsel resulted in her lack of representation on June 13.

Ms. Esteves insists that *Atlantic Petroleum Corp., supra,* supports her contention that the trial judge abused his discretion in granting Mr. Kaufman's motion to withdraw as her counsel. However, *Atlantic Petroleum* is quite different from Ms. Esteves' case. There we considered whether the trial judge abused his discretion in (1) allowing counsel for Atlantic Petroleum Corp. to withdraw on the day of trial, and (2) dismissing the company's lawsuit after it could not find replacement counsel overnight.[7] Ms. Esteves' complaint was not dismissed. In addition, unlike Atlantic Petroleum Corp., Ms. Esteves consented to Mr. Kaufman's withdrawal. Ac-

---

7. In *Atlantic Petroleum Corp.,* we said in part:
 [W]e can find nothing in the record, either individually, or in the aggregate, that justified a withdrawal which had the effect of terminating this lawsuit.
 572 A.2d at 474.

cordingly, *Atlantic Petroleum Corp.* does not control this factually different case.

We have previously held that our "rules [regarding the appearance and withdrawal of counsel] are designed to promote rather than frustrate the interests of fundamental justice." *Atlantic Petroleum Corp.*, 572 A.2d at 472 (citing *Urciolo v. Urciolo*, 449 A.2d 287, 291 (D.C.1982)). Under the circumstances of this case, to require Mr. Esteves to once again wait for trial, through no fault of his own, would have frustrated the interests of fundamental justice. Accordingly, we conclude that on the facts of this case, Ms. Esteves consented to the withdrawal, and had sufficient notice in time to obtain other counsel.

### The Request For A Continuance

■ Ms. Esteves argues that the trial court abused its discretion in denying her motion for a continuance. In *Hammond v. Weekes*, 621 A.2d 838, 844 (D.C.1993) we said: "Ordinarily, the decision to grant or deny a continuance rests in the sound discretion of the trial court and will not be reversed absent an abuse of that discretion" (quoting *Thompson v. Thompson*, 559 A.2d 311, 313 (D.C.1989)). "We are especially hesitant to overturn the denial of a day-of-trial request for a continuance...." *Taylor v. Washington Hosp. Ctr.*, 407 A.2d 585, 594 (D.C.1979). Ms. Esteves had already been granted a two month continuance since trial was to have started on April 13. Her delay in failing to depose Mr. Esteves in the two month period between April and June is unexplained. Mr. Esteves vigorously opposed the first continuance. Furthermore, Ms. Esteves knew in May 1995, that her counsel would withdraw, and she consented to that withdrawal on June 9, even though she knew trial was scheduled for June 13. She made no effort to obtain new counsel. Granting her a second continuance in the face of her dilatory behavior would not have

been in the interests of justice. *See Taylor*, 407 A.2d at 594–95.

### The Due Process/Interpreter Issue

■ Ms. Esteves argues that her due process rights were violated when the trial court failed to inquire as to whether she needed an interpreter. Under our law an interpreter may be appointed for a "communication-impaired person." *See* D.C.Code § 31–2701 (1993 Repl.) [8] The statute defines a "communication-impaired person" as "a person whose hearing is impaired or who does not speak English." D.C.Code § 31–2701(2). A "non-English speaking person" is defined as one "who is unable to readily understand oral and written communications in the English language or who cannot communicate effectively in the spoken English language." D.C.Code § 31–2701(4).

The record on appeal reveals that Ms. Esteves could communicate in English. While her English was not perfect, it was good enough to be understood and to make herself understood, even though she claimed she could not read English very well. Indeed, at no time did she advise the trial court that she was not an English-speaking person. After Mr. Esteves' counsel made an argument in support of his motion for judgment, Ms. Esteves said she did not understand some words. Although she may not have understood some words or legal terms, the trial judge's questions were put to her in plain English that she could readily understand; she had no difficulty posing understandable questions to Mr. Esteves; and she readily responded after the judge explained certain questions to her. In short, the trial judge had no reason to make an inquiry regarding Ms. Esteves' ability to communicate in English.

Due process "expresses the requirement of 'fundamental fairness,'" *Lassiter v. Department of Social Servs.*, 452 U.S. 18, 24, 101

---

8. D.C.Code § 31–2702(a) (1993 Repl.) provides in part:

Whenever a communication-impaired person is a party or witness ... before a court at any stage of a judicial or quasi-judicial proceeding before a division or office of a court of the District of Columbia, including but not limited to, civil and criminal court proceedings, ...

the appointing authority may appoint a qualified interpreter to interpret the proceedings to the communication-impaired person and to interpret the communication-impaired person's testimony. The appointing authority shall appoint a qualified interpreter upon the request of the communication-impaired person.

S.Ct. 2153, 2158, 68 L.Ed.2d 640 (1981), and on the record before us, we cannot conclude that Ms. Esteves was denied fundamental fairness when the trial court failed to inquire as to whether she needed an interpreter.

## Sanctions And Award Of Costs And Fees To Mr. Esteves

Ms. Esteves contends that the trial court abused its discretion in imposing sanctions solely against her and not her counsel. In his order dated April 25, 1995, the trial judge ordered Ms. Esteves to pay costs and fees to Mr. Esteves relating to his opposition to Ms. Esteves' notice of deposition and request for a continuance, as well as costs and fees covering defense counsel's appearance and preparation for trial on April 13, 1995.[9] In addition, he placed Ms. Esteves on notice that if she did not prevail on the merits of her complaint, Mr. Esteves would be entitled to additional costs and fees. Prior to issuing his April 25, 1995, written order, the trial judge made the following oral comments on April 13, 1995:

> [M]ake no mistake about it, and I hope when this order is written there won't be any mistake about it. I am finding that the violation[s] of the discovery rules in this case were such that attorney's fees will be relevant as a sanction[,] are appropriate and are to be determined by who prevails in this case.... And I am indeed

finding a discovery violation. The only thing I'm leaving open for future decision in this regard is the amount of the attorney's fees and whether or not they will be payable in this case.

The trial judge signed an order on June 20, 1995, concluding that since "the Amended Complaint is not well grounded in fact nor is it warranted by existing law," Ms. Esteves would have to pay Mr. Esteves' attorney's fees and costs "subsequent to those reflected in Defendant counsel's affidavit of June 8, 1995...."[10] Ms. Esteves filed her Rule 60(b) motion on July 18, 1995, which, *inter alia*, argued that the trial court had no authority to award attorney's fees against her.

 We review the imposition of sanctions under Super. Ct. Civ. R. 37(b)(2)[11] for abuse of discretion. *See Vincent v. Anderson*, 621 A.2d 367, 373 (D.C.1993); *Floyd v. Leftwich*, 456 A.2d 1241, 1244 (D.C. 1983) and *Firestone v. Harris*, 414 A.2d 526, 527 (D.C.1980). A Rule 11[12] "decision on whether a paper was supported by law ... is subject to *de novo* review because the issue is strictly one of law"; however, "whether a violation of the factual inquiry or improper purpose prongs of Rule 11 has occurred is subject to review for abuse of discretion." *Montgomery v. Jimmy's Tire & Auto Ctr., Inc.*, 566 A.2d 1025, 1029 (D.C.1989). On the record before us, we see no abuse of discre-

---

**9.** On June 8, 1995, defense counsel submitted an affidavit showing fees and costs of $2,067.50.

**10.** Counsel for Mr. Esteves filed an affidavit reflecting fees and costs of $1,120.00.

**11.** Rule 37(b)(2) provides in pertinent part:

> If a party ... fails to obey an order to provide or permit discovery, ... the Court may make such orders in regard to the failure as are just, including among others the following.... In lieu of any of the foregoing orders or in addition thereto, the Court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the Court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

> Rule 30(b)(1) provides in part that: "A party desiring to take the deposition of any person upon oral examination shall give reasonable notice in writing to every other party to the action."

**12.** Prior to amendment, effective June 1, 1995, Rule 11 provided in pertinent part:

> The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is signed in violation of this Rule, the Court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee.

tion in the award of attorney's fees and costs relating to the discovery violation. *See Floyd, supra.*

■ There is sufficient basis for the imposition of discovery sanctions in this case. Ms. Esteves did not give reasonable notice to Mr. Esteves regarding the taking of his deposition. Notice was given long after the January 30, 1995, pre-trial conference, and one week prior to the scheduled April 13, 1995, trial date. Since Ms. Esteves caused a two month delay in the trial by failing to conduct timely discovery, the trial court's award of discovery sanctions did not constitute abuse of discretion. *See Floyd and Firestone, supra.* However the remaining question is whether the trial judge abused his discretion in imposing the sanction solely on Ms. Esteves, rather than on both Ms. Esteves and her attorney. We discuss this issue below.

■ With respect to the Rule 11 sanctions' issue, the trial court stated that Ms. Esteves' "Amended Complaint is not well grounded in fact nor is it warranted by existing law...." In *Kleiman v. Aetna Cas. and Sur. Co.,* 581 A.2d 1263, 1266 (D.C.1990), we said:

> Under Rule 11, ... sanctions are imposed only if reasonable pre-filing inquiry would have disclosed that the pleading, motion, or paper was not well grounded in fact, was not warranted by existing law, or was interposed for improper purpose.... Papers must not be viewed 'with 20/20 hindsight'.... Rather, the trial judge should 'test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted.'

(citations omitted). While a failure to prove the allegations of a complaint may be relevant to a Rule 11 analysis, "[t]he court's inquiry must be focused on pre-filing conduct." *Park v. Sandwich Chef, Inc.,* 651 A.2d 798, 803 (D.C.1994). Here, the trial judge's oral discussion on June 13 was devoted mainly to Ms. Esteves' failure to present any evidence of fraud; and his June 20, 1995, written findings of fact and conclusions of law do not elucidate any pre-filing conduct. "[H]e made no explicit findings as to the precise inquiry that should have been made, and as to whose responsibility it was to make it." *Id.* (referencing *Stansel v. American Sec. Bank,* 547 A.2d 990, 996 (D.C.1988)). Furthermore, "[a] trial court's imposition of sanctions cannot be sustained 'unless the court makes findings on all the relevant issues stated in Rule 11.'" *Id.* (referencing and quoting *Green v. Louis Fireison & Assocs.,* 618 A.2d 185, 189 (D.C.1992)). In that regard, there is no explanation as to how the trial court could conclude that the complaint was "not well grounded in fact" when it survived a motion to dismiss. In filing the motion to dismiss, Mr. Esteves conceded all the facts in the complaint. *Green,* 618 A.2d at 189 n. 6.

■ The trial court also concluded that: "Plaintiff has not set forth any credible evidence that her consent to the Agreement was induced by fraud[.] Nor has the Plaintiff set forth any credible evidence of fraud in support of her Amended Complaint To Set Aside Property Settlement Agreement Due to Fraud." The trial court clearly focused on the outcome of the trial—the lack of credible evidence of fraud—rather than on the initial filing of the lawsuit. While the outcome of a trial may be relevant, in imposing Rule 11 sanctions on the ground that the amended complaint was not "warranted by existing law," a trial judge must inquire into the pre-filing analysis of existing law. *Park, supra.* This was not done here. Moreover, as we said in *Green, supra,* 618 A.2d at 188–89 "Rule 11 is not violated solely because a particular pleading is not warranted by existing law." Rather, "[i]f such pleading can be justified by a good faith argument for the extension, modification, or reversal of existing law, sanctions are not in order." Here, the record reflects no inquiry of Ms. Esteves and her counsel as to their pre-filing theory of the fraud case, and whether they contemplated making any type of good faith effort involving an extension, modification or reversal of existing law. Based upon the foregoing, we cannot sustain the imposition of Rule 11 sanctions because the trial court failed to make "findings on all the relevant issues stated in Rule 11." *Park,* 651 A.2d at 803.

Finally, both with respect to the discovery sanction under Rule 37 and the sanction under Rule 11, the trial judge did not explain why the sanction was imposed solely on Ms. Esteves, and not her counsel, or both Ms. Esteves and her counsel. Since her counsel was responsible for noticing Mr. Esteves' deposition, and since he also signed the amended complaint, it is not clear on the record before us why the trial judge imposed all the sanctions on Ms. Esteves. If, upon review, the trial court finds that Ms. Esteves' attorney failed to notice Mr. Esteves' deposition during the discovery period, did not follow through in noticing Mr. Esteves' deposition after the April 13, 1995, hearing, did not make a proper pre-filing inquiry concerning the fraud complaint, knew that there was no credible basis on which fraud could be proved under existing law, and had no good faith argument for extending, modifying or reversing existing law, the order imposing sanctions should explain why it requires only the client to pay the attorney's fees and costs of Mr. Esteves, and not the attorney, or both the client and the attorney.

For the foregoing reasons, we affirm the trial court's judgment for Mr. Esteves with respect to the merits of Ms. Esteves' amended complaint. However, we vacate the orders awarding sanctions and remand the case to the trial court for further proceedings consistent with this opinion.

*Affirmed in part and Remanded in part.*