Talmadge HANCOCK, Appellant,

v.

MUTUAL OF OMAHA INSURANCE COMPANY, Appellee.

No. 83–80.

District of Columbia Court of Appeals.

Feb. 2, 1984.

Craig Dean Katz, Washington, D.C., for appellant.

David F. Grimaldi, Washington, D.C., for appellee.

Before NEBEKER, PRYOR and TERRY, Associate Judges, in chambers.

NEBEKER, Associate Judge:

Appellant Hancock challenges a trial court ruling awarding him a sum of money under a disability insurance contract. He has been granted leave to proceed with his appeal *in forma pauperis.* His attorney has filed a motion for leave to withdraw; appellee, Mutual of Omaha, has filed a motion to dismiss; and appellant has filed a pro se request that he receive a transcript of the trial court proceedings at government expense. We grant the motion to withdraw, defer action on the motion to dismiss, and hold that a losing civil litigant who appeals *in forma pauperis* has the burden of demonstrating that a substantial question exists on appeal in order to obtain a transcript provided at government expense.

I

On December 21, 1977, Hancock purchased a disability insurance policy from Mutual of Omaha (the "Insurer"). Insurer agreed to pay him a certain sum of money each month if Hancock became physically disabled and unable to engage in his usual occupation. Thereafter, on December 6, 1978, Hancock suffered a severe work-related injury and received a 100% Temporary Total Disability rating from the State of Maryland Workmen's Compensation Board. Insurer then paid Hancock the scheduled benefits up until the end of September 1979. At that point, Insurer contended that appellant was no longer disabled within the terms of the policy, and refused to make further payments. Hancock sued for breach of contract in the amount of $250,000, and for punitive damages of $2,000,000, alleging that the Insurer's breach was willful, wanton and in bad faith.

After trial before the Honorable Joseph M. Hannon, on November 30, 1982, a jury awarded Hancock $7,402.40, with interest and costs. On December 21, 1982, Hancock's attorney filed a notice of appeal and requested a transcript of the direct examination of all plaintiff's witnesses except one, the jury instructions, and his closing arguments. The notice of appeal indicated that appellant would pay for the transcript.

On January 18, 1983, Hancock filed in the Superior Court a motion to proceed *in forma pauperis* along with the appropriate affidavit, alleging financial inability to pay for the above-mentioned transcript.[1] Judge James A. Washington, Jr. granted the motion, and asked Judge Hannon to direct the government to provide a transcript at its own expense. Under D.C.App.R. 23(b), in an *in forma pauperis* appeal, the notice of appeal shall be considered by the trial judge as encompassing a request for preparation of transcript at government expense. Judge Hannon refused to certify the case as

---

1. Hancock stated that his last employment was December 1978, and that his only income during the preceding year was a judgment in another case in the amount of $17,500. Of that $17,500, Hancock claimed he only received $4,000, after having paid his legal fees and medical and personal expenses.

presenting a substantial question, stating that "[a]side from the issue of whether Talmadge Hancock is entitled to *in forma pauperis* appeal, no non-frivolous issue is presented herein to warrant granting of a transcript."

Hancock replied to Judge Hannon's memorandum on March 7, 1983, objecting to the judge's characterization of the appeal and asking this court to provide him with free copies of the trial transcript. The following day, Hancock's attorney filed a motion for leave to withdraw because, despite numerous attempts, he had been unable to communicate with Hancock to discuss the appeal. There was also a dispute over financial arrangements and the attorney had not received all the money to which he was assertedly entitled. Hancock stated that he did not object to the withdrawal of his attorney, but that he nevertheless intended to pursue the appeal. Insurer filed an opposition to the request to withdraw as well as a motion to dismiss for failure to prosecute, on March 15, 1983.

## II

The District of Columbia Code of Professional Responsibility provides that a lawyer may request permission to withdraw if his client "renders it unreasonably difficult for the lawyer to carry out his employment effectively" or "[d]eliberately disregards an agreement or obligation to the lawyer as to expenses or fees." DR 2–110(C)(1)(d), (f). In his motion for leave to withdraw, the

attorney said that his numerous telephone calls and letters as well as a telegram failed to elicit a response from appellant, rendering the attorney unable to file a definitive statement concerning the appellate issues. He also stated that financial arrangements were "a condition precedent to further work on the appeal," and that no arrangements had been made to date.

■ Hancock expressed no objection to the withdrawal. However, Insurer, in its opposition to the motion for leave to withdraw, claimed that it would be prejudiced if the motion were granted without the availability of substitute counsel. Any resulting prejudice to appellee, however, can be alleviated by requiring appellant to retain substitute counsel promptly, if appellant wishes to be represented by counsel. If he wishes to proceed pro se, there will be no delay. When a client leaves telephone calls and letters unanswered, thus refusing to communicate with his attorney, and makes no arrangements to pay the attorney for past services, the attorney should not be forced to proceed with the case.[2] We therefore grant the motion for leave to withdraw.

■ It is clearly within the "sound discretion" of the trial court to dismiss a case for failure to prosecute.[3] Likewise, when a party fails to perfect his appeal, this court will grant a motion to dismiss, *Meredith v. Fitzgerald,* 102 A.2d 306, 307 (D.C.1954), although the issue has not been addressed in this court for thirty years. We defer any decision on the motion to dismiss for thirty

---

**2.** This court has not previously considered the application of DR 2–110(C)(1). There are, however, two D.C. Legal Ethics Committee Opinions which address the issue. In 1976, an attorney whose client had repudiated a settlement agreement and who had advanced expenses that the client had not reimbursed requested permission to withdraw. The Committee said that absent a contractual obligation, the lawyer is not required to advance litigation expenses and opined that withdrawal would not violate DR 2–110(C)(1)(d) and (f). Opinion No. 21, Sept. 27, 1976.

In 1980, the Committee opined that to withdraw from representation of an uncooperative client was permissible under the Disciplinary Rules. Opinion No. 85, March 18, 1980. The

client authorized the attorney to handle matters in a certain way, changed her mind after the attorney had followed her instructions, and thereafter failed to communicate her plans to him. The Committee found that the attorney should not be required to continue the representation under those circumstances.

**3.** *Morgan v. Leitner,* 444 A.2d 932, 932 (D.C. 1982). This court has instructed that as dismissal for failure to prosecute is a drastic remedy, it should be granted sparingly. *Id.; Frazier v. Center Motors, Inc.,* 418 A.2d 1018, 1020 (D.C.1980). Factors to consider include the length of and reasons for the delay, as well as the resulting prejudice to the parties. *Id.*

days. If appellant has then taken no action on the remanded issue, the appeal will be dismissed.

### III

The law concerning free transcripts for indigent appellants first developed in the context of criminal appeals. In 1956, the United States Supreme Court held that adequate appellate review should not depend on the ability of appellants to pay costs in advance, and that indigent defendants must be afforded the same opportunity for appellate review as defendants who have funds to purchase transcripts. *Griffin v. Illinois,* 351 U.S. 12, 18–19, 76 S.Ct. 585, 590–591, 100 L.Ed. 891 (1956).

By 1962, the Supreme Court's focus became "equality of consideration for all litigants," and the Court held that a criminal defendant could take an appeal *in forma pauperis* if the trial court certified in writing that such appeal was not frivolous. *Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). Because appeal in a criminal case is a matter of right, the Court placed the burden of showing frivolousness on the government. *Id.* at 447–48, 82 S.Ct. at 921–922. Moreover, if the District Court refused to certify that the case was being brought in good faith, the Court instructed the Courts of Appeals to provide assistance of counsel and a transcript of the record sufficient to enable the appellant to show that the District Court was in error. Two years later, the Court stated that where counsel representing an indigent criminal defendant on appeal was not counsel at trial, he should receive, at public expense, the transcript relevant to the points of error assigned. *Hardy v. United States,* 375 U.S. 277, 279, 84 S.Ct. 424, 426, 11 L.Ed.2d 331 (1964).

In 1970, this court held that in a criminal case, the trial court may require trial counsel to demonstrate the need for the tran-script on appeal. Counsel must indicate to the court the points to be raised so that the relevant transcript could be ordered, if trial counsel "could be relied upon to prosecute the appeal." *Gaskins v. United States,* 265 A.2d 589, 591 (D.C.1970). However, where trial counsel does not represent the litigant on appeal, the court said that "an appellant may not be forced to proceed with[out] . . . a transcript." *Id.* at 592.

The Supreme Court reiterated its position on the issue in 1971, emphasizing that "the State must provide a full verbatim record where that is necessary to assure the indigent as effective an appeal as would be available to the defendant with resources to pay his own way." *Mayer v. City of Chicago,* 404 U.S. 189, 195, 92 S.Ct. 410, 415, 30 L.Ed.2d 372 (1971). The Court also said that where the grounds of appeal make out a "colorable need for a complete transcript," the state had the burden to show that only a portion of the transcript would "suffice for an effective appeal on those grounds." *Id.*

The equal protection guarantees apply in both civil and criminal cases.[4] *Lee v. Habib,* 137 U.S.App.D.C. 403, 413, 424 F.2d 891, 901 (1970). The D.C. Circuit acknowledged the possibility of a constitutional violation in the civil rental-housing context if meaningful appellate review depended upon the litigants' ability to purchase transcripts. *Id.* at 410, 424 F.2d at 898. The court held that the government "must pay for transcripts for indigent litigants allowed to appeal *in forma pauperis* to the District of Columbia Court of Appeals if the trial judge or a judge of the District of Columbia Court of Appeals certifies that the appeal raises a substantial question the resolution of which requires a transcript." *Id.* at 416, 424 F.2d at 904; *see id.* at 415, 424 F.2d at 903 (quoting similar language from 28 U.S.C. § 753(f) (1976)).[5] Because substan-

---

4. *See Bolling v. Sharpe,* 347 U.S. 497, 498–500, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954) (equal protection clause of the Fourteenth Amendment applies in the District of Columbia through the due process clause of the Fifth Amendment).

5. Because this case preceded the effective date of the Court Reorganization Act of 1970, it is binding on this court.

tiality of the questions would be difficult to assess with an incomplete record, the court instructed that "[d]oubts about substantiality of the questions on appeal and the need for a transcript to explore them should be resolved in favor of the petitioner." *Id.,* 137 U.S.App.D.C. at 417, 424 F.2d at 905.[6]

This court followed the *Lee* case shortly after it was decided, noting that the appellant should refer to the trial judge to certify whether substantial questions exist and whether the transcript is necessary to resolve those questions. *McKelton v. Bruno,* 264 A.2d 493, 495 (D.C.1970). In addition, the court instructed the trial court to prepare a "concise statement" of reasons for the record in the event the required certification is denied. *Id.*

■ A judgment of any trial court is presumed to be valid, and a losing party who notes an appeal from such a judgment bears the burden of "convincing the appellate court that the trial court erred." *Cobb v. Standard Drug Co.,* 453 A.2d 110, 111 (D.C.1982). In meeting that burden, appellant must present the court with a record sufficient to show that the error occurred. *Id. Cobb* did not involve an *in forma pauperis* appeal, however, and therefore it must be reconciled with *Lee* and *McKelton.* Although appellant here must convince this court that the trial court erred, *Cobb* does not require that *in forma pauperis* appellants produce the complete record.

■ The ultimate issue presented in this case, therefore, is who bears the burden of establishing the existence of a substantial question, the resolution of which requires a transcript, when the appellant is proceeding *in forma pauperis?* We hold that the losing civil litigant who proceeds *in forma pauperis* has the burden of convincing the trial court that a substantial question exists on appeal in order to get a free transcript. To hold otherwise would be to treat the prevailing litigant disparately when his adversary is indigent, for it would place upon him a burden of showing the frivolity of any effort to call into question the judgment in his favor. A non-indigent appellant always has the cost of appeal as a check against bringing a frivolous appeal. He also runs the risk of paying costs and attorney fees. *See Tupling v. Britton,* 411 A.2d 349, 351–53 (D.C.1980).

Because Hancock has not had an adequate opportunity to demonstrate the substantiality of his appeal, we remand the record to the trial court to allow appellant thirty days from the issuance of this opinion to demonstrate that a substantial question exists.[7] In addition, appellee shall be allowed an opportunity within the time permitted by the trial court, to refute the assertion of substantial question. If the trial court determines there are no substantial issues, a statement of reasons is required by *McKelton v. Bruno, supra,* 264 A.2d at 495. Upon completion of the remand proceedings or failure of appellant to act within the thirty day period, the Clerk of the trial court shall promptly transmit the record, as supplemented, to the Clerk of this Court.

*So ordered.*

---

*Compare Brown v. Plant,* 157 A.2d 289, 291 (D.C.1960) (court not aware of any "statute or rule which permits the Municipal Court for the District of Columbia [redesignated the District of Columbia Court of General Sessions effective January 1, 1963] to require a transcript at public expense ..."). In view of more recent decisions, this statement is of limited significance.

6. It should be noted that before reaching its conclusion, the court discussed the possibility that *in forma pauperis* cases might not be adequately screened, and that therefore the transcript would be furnished only after a judge's determination that there are issues worth appealing. *Id.* 137 U.S.App.D.C. at 412, 424 F.2d at 900. The court then cited two cases, *id.* at 412 n. 38. 424 F.2d at 900, both of which were criminal cases and therefore not inconsistent with the court's holding.

7. This opportunity is not without its price, because if appellant speciously asserts the existence of a substantial question which appellee refutes to the trial court's satisfaction, appellant must pay the cost of that demonstration. Costs may be taxed by this court against appellant and deducted from the judgment recovered. *See* D.C.Code § 17–302 (1981).