**ATLANTIC PETROLEUM CORPORATION, Appellant,**

v.

**JACKSON OIL COMPANY, Appellee.**

No. 87–623.

District of Columbia Court of Appeals.

Argued Dec. 7, 1989.
Decided April 5, 1990.

---

Thomas A. Gentile, Chevy Chase, Md., for appellant.[1]

Before ROGERS, Chief Judge, FARRELL, Associate Judge, and MACK, Senior Judge.

ROGERS, Chief Judge:

Atlantic Petroleum Corporation appeals from the dismissal of its lawsuit against Jackson Oil Company for failure to prosecute. Super.Ct.Civ.R. 41(b). Atlantic Petroleum Corporation (plaintiff) alleges that the trial judge abused his discretion by (1) granting the motion of plaintiff's trial counsel to withdraw his appearance on the day of trial, (2) concurrently denying plaintiff's request for a continuance to find substitute counsel ànd (3) dismissing the plaintiff's lawsuit against Jackson Oil Company for failure to prosecute when plaintiff was unable to find substitute counsel overnight who was willing to go to trial the following day. Although the issue is close, we agree

that the trial judge abused his discretion in granting counsel's motion to withdraw and remand to the trial court with instructions to ·vacate the judgment of dismissal and reschedule the case for trial on the merits.

## I.

This appeal arises out of the difficulties encountered by plaintiff's counsel's law firm during its representation of plaintiff corporation. Plaintiff's counsel filed two motions for leave to withdraw appearance as trial counsel prior to the instant motion to withdraw at issue in this appeal; but notwithstanding difficulties, counsel's earlier motions to withdraw from representation were denied. Upon considering the first motion to withdraw filed by plaintiff's counsel, Judge Weisberg denied the motion with the admonition to the president of plaintiff corporation that she could either get new counsel or work with present counsel but, in any event, trial would not be again continued so that plaintiff could obtain new counsel.

The trial of Atlantic Petroleum Corporation's lawsuit against Jackson Oil Company was scheduled to begin on May 13, 1987. Before commencing, Judge Webber conducted a hearing on the motion for leave to withdraw as counsel at issue in the instant appeal and filed by plaintiff's counsel[2] about one month before, on April 15, 1987. Counsel's motion alleged that the president of plaintiff corporation had failed, as directed by the trial court, to file an affidavit from her physician concerning her hospitalization which had led to a continuance of an earlier trial date. Counsel also informed Judge Webber that plaintiff's president had been uncooperative in preparing for trial, and further, that she had threatened to sue counsel if she lost her lawsuit against Jackson Oil. Consequently, although conceding that "[t]he groundwork had been done in [preparing] the case," counsel maintained that the attorney/client relationship had deteriorated to a point which warranted counsel's withdrawal. After hearing testimony

---

1. *Jackson Oil Company*, appellee, did not file a brief or appear at oral argument in this appeal.

2. Plaintiff is represented by new counsel on appeal.

concerning specific events where plaintiff's president had failed to return telephone calls from counsel and to show up for pretrial preparation meetings,[3] and also concerning the two previous motions filed by counsel to withdraw which were based in part on the president's failures to pay attorney's fees and to cooperate, Judge Webber granted counsel's motion for leave to withdraw on the ground that the relationship between plaintiff's president and counsel had become strained to a point where counsel could not effectively represent plaintiff. Plaintiff's president vigorously opposed the motion to withdraw unless she were given a continuance during which to retain new counsel.

Judge Webber then denied plaintiff's president's request for a continuance to find substitute counsel. The judge viewed himself to be bound by Judge Weisberg's earlier ruling that there would be no more continuances based on substitution of counsel. Judge Webber recessed the trial proceedings until 3:00 p.m. the following day, however, in order to "enable [plaintiff's president] to do whatever [she] can do to get ready to go forward with the trial tomorrow." Judge Webber acknowledged that plaintiff was a corporation and thus could not proceed *pro se*,[4] but nevertheless ruled that there "is the possibility of [plaintiff] being prepared to go forward with the trial."

The following day, May 14, 1987, plaintiff's president appeared in court with new counsel who sought a continuance to June 22, 1987, in order to prepare for trial. New counsel advised Judge Webber that twenty-four hours was inadequate time to properly and fairly prepare for trial. The lawsuit was four and one half years old and had generated extensive discovery. Judge Webber, reaffirming that he was bound by Judge Weisberg's earlier ruling and being of the opinion that plaintiff's president had received adequate notice that substitution of counsel would not be grounds for fur-

ther continuance, denied the request for postponement of the trial, and because plaintiff was unprepared to go forward, granted Jackson Oil's motion to dismiss the lawsuit for failure to prosecute.

## II.

It is well settled that the decision to dismiss a lawsuit for failure to prosecute is committed to the sound discretion of the court. *Morgan v. Leitner*, 444 A.2d 932 (D.C.1982); Super.Ct.Civ.R. 41(b). Dismissal being so drastic a remedy, however, this court has instructed that it should be granted sparingly and with care. *Morgan v. Leitner, supra*, 444 A.2d at 932; *Hancock v. Mutual of Omaha Ins. Co.*, 472 A.2d 867, 869 n. 3 (D.C.1984). Factors that the court will consider on appeal include the trial judge's explication of the reasons for the failure to prosecute as well as the resulting prejudice to parties. *Morgan v. Leitner, supra*, 444 A.2d at 932; *Hancock v. Mutual of Omaha Ins. Co., supra*, 472 A.2d at 869 n. 3. Judge Webber considered the reasons for appellant's failure to go forward with the trial—namely, that plaintiff lacked counsel prepared to go to trial on the scheduled date and, under the law of the case, there could be no further continuance to obtain new counsel. The judge noted further that plaintiff had received sufficient warning of this result. Since Judge Webber's decision to dismiss the lawsuit and, accordingly, the reasons underlying plaintiff's failure to retain counsel ready for trial are inextricably related to his prior decisions to grant plaintiff's trial counsel leave to withdraw and to deny a continuance, in reviewing the decision to dismiss plaintiff's lawsuit, we review whether Judge Webber properly exercised his discretion in making these underlying decisions.

Rule 101(c)(4) of the Superior Court Civil Rules provides that an attorney's request to withdraw may be denied "if his withdrawal would unduly delay trial of the

---

3. Counsel explained to the court: "We know what is in the trial. It was just a matter of going over it with the plaintiff, preparing her to present her properly to the court...."

4. Since plaintiff is a corporation it must appear through counsel pursuant to Super.Ct.Civ.R. 101(a)(2).

case, be unduly prejudicial to any party, or otherwise .not be in the interests of justice." This court has held that the rules are designed to promote rather than frustrate the interests of fundamental justice. *Urciolo v. Urciolo,* 449 A.2d 287, 291 (D.C. 1982). The rules are consistent with provisions of the District of Columbia Code on Professional Responsibility which provide that a lawyer may request permission to withdraw if his client "renders it unreasonably difficult for the lawyer to carry out his employment effectively." DR 2–110(C)(1)(d); *Hancock v. Mutual of Omaha Ins. Co., supra,* 472 A.2d at 869 n. 2. We conclude that under the circumstances, in which trial counsel had a longstanding relationship with plaintiff and conceded basic readiness to try the case, see note 3, *supra,* had acknowledged on prior occasions that new counsel would require assistance in becoming familiar with the case files before proceeding to trial, knew the client had decided not to retain new counsel, and failed to demonstrate a fundamental change in the relationship with the client, Judge Webber's grant of counsel's motion to withdraw on the morning of the second trial date was an abuse of discretion. Granting the motion meant that plaintiff's lawsuit would be dismissed, thereby undermining a purpose of the rules. *See Urciolo v. Urciolo, supra,* 449 A.2d at 291 n. 5. The judge's finding that the attorney/client raltionship was strained to the extent that trial counsel could not effectively represent plaintiff is unsupported by the record and clearly erroneous.

█ Appellate court decisions provide only limited guidance for the trial court in deciding whether to grant an eleventh-hour motion to withdraw from representation. Inevitably, the decision turns on the trial judge's evaluation of an interpersonal relationship with nuances that often may fail to be revealed in a trial transcript. Nevertheless, and precisely because of the nature of the decision, the trial judge must assure

that an adequate record is available for appellate review. The succinct finding is clearly unlikely to suffice once the appellate court is asked to review the record under circumstances where the result is that the plaintiff's lawsuit is dismissed. Accordingly, in exercising discretion, Judge Webber had to assure that there was in the record sufficient evidence to reveal the type of total breakdown in the attorney/client relationship that would justify, in effect, dismissal of plaintiff's lawsuit.

In *Hancock v. Mutual of Omaha Ins. Co., supra,* the court held, in considering the application of DR 2–110(C)(1), that a client's failure to cooperate could result in a breakdown of the attorney/client relationship which warranted the withdrawal of counsel. 472 A.2d at 869 n. 2.[5] The court granted appellant counsel's motion for leave to withdraw on the ground that his client had "render[ed] it unreasonably difficult for the lawyer to carry out his employment effectively." The client had left telephone calls and letters unanswered and had made no arrangements to pay the attorney for past services. *Id.* at 869. The client did not object to counsel's withdrawal; instead the intervenor insurance company expressed concern about being prejudiced in the absence of substitute counsel. In determining that counsel's motion should be granted the court noted that any prejudice to intervenor could be alleviated by requiring the client to retain substitute counsel promptly or by the client proceeding *pro se. Id.* The instant case, of course, differs from *Hancock* since counsel's withdrawal occurred on the trial date and the plaintiff could not proceed *pro se* and objected to counsel's withdrawal in the absence of a reasonable continuance to retain new counsel. While the court in *Hancock* did not explicitly define the evidentiary burden of counsel who requests leave to withdraw an appearance based on a breakdown of the attorney/client relationship due to the client's failure to cooperate, the

---

5. In *Hancock,* the court referred to the D.C. Bar Legal Ethics Committee opinion No. 85, March 18, 1980, on withdrawal from representation of an uncooperative client under the disciplinary rules. The client had authorized the attorney to proceed in one way, changed her mind after the attorney had followed her instructions, and failed thereafter to communicate her plans to her attorney. *Id.*

court did observe that an attorney should not be forced to proceed with a case when the client refuses both to communicate and to pay for services rendered. *Id.*

■ Courts in other jurisdictions also have not provided much guidance for determining when an attorney/client relationship has deteriorated to a point which warrants the trial judge's decision to grant a motion to withdraw as counsel. Undoubtedly this is because of the variety of circumstances that may arise. *Cf. Blessing v. Dow Chemical Co.,* 521 A.2d 1176, 1179 (Me.1987); *Smith v. Bryant,* 264 N.C. 208, 141 S.E.2d 303, 305 (1965). However, we agree with the Supreme Judicial Court of Maine that, "in the absence of substantial prejudice to [plaintiff] and unnecessary delay, [her] attorneys should be allowed to withdraw should the court conclude that there has been a *complete breakdown* in the attorney-client relationship." *Blessing v. Dow Chemical Company, supra,* 521 A.2d at 1180 (emphasis added).

Judge Webber did not speak in terms of a complete breakdown in the relationship between plaintiff and its counsel, and the record does not support a finding that there was. The plaintiff's president and trial counsel had encountered a series of problems over the years and, for better or worse, had worked them out to the point that trial counsel had taken steps to be prepared for trial. Judge Weisberg's order gave plaintiff the option of proceeding with trial counsel or retaining new counsel and, thus, when plaintiff's president appeared before Judge Webber with trial counsel it was clear what her decision was. Indeed, she expressed surprise that counsel had filed a motion to withdraw. From trial counsel's perspective, he was aware that notwithstanding previous problems with the client, the court had denied his prior requests to withdraw. Further, counsel's statements to the trial judge about why withdrawal should be permitted on the eve of the second trial date were not materially different from the kinds of problems that counsel had experienced in the past. More-

over, in view of Judge Weisberg's admonition to plaintiff's president, that there would be no continuance of the trial date for purposes of obtaining new counsel, trial counsel had only to make his best efforts on behalf of the plaintiff (counsel conceded "the groundwork had been done"); if plaintiff's president chose, notwithstanding Judge Weisberg's ruling not to cooperate fully with trial counsel, then she proceeded at her peril. *Cf. Hagans, Brown & Gibbs v. First National Bank of Anchorage,* 783 P.2d 1164 (Alaska 1989) (client may be held liable for breaching a contractual duty of good faith and fair dealing inherent in contingency fee arrangement where client's decision not to settle is designed to take advantage of counsel).

We do not overlook the fact that trial counsel advised Judge Webber that he had been told by someone else in the law firm that plaintiff's president had threatened to sue the law firm if she lost the case against Jackson Oil. Understandably, no law firm would want to proceed to represent a client under penalty of a lawsuit, particularly when the client had proved difficult in the past. Plaintiff's president, however, denied having made that threat, and that circumstance was not even referred to by Judge Webber. After hearing testimony concerning various actions that taken together indicated plaintiff's president's failure to cooperate, Judge Webber, concluded in summary fashion that the attorney-client relationship had become too strained to allow counsel to proceed. Yet the telling point is that counsel indicated that he was prepared to try this predictably complex lawsuit, and that what remained for him to do was to "go[ ] over it with the plaintiff, preparing her to present her properly to the court...." Thus, the trial judge could have directed plaintiff's president to meet with her attorneys overnight and be ready for trial the next day.[6]

In granting counsel's motion to withdraw, Judge Webber was alerted to the prejudice that would follow. The lawsuit had been pending for some time and there

---

**6.** A remand for further elucidation of this matter would be pointless in a case that has already been in the trial court for five years when Judge Webber ruled.

had been considerable discovery. Trial counsel had indicated that he would assist new counsel in becoming familiar with the law firm's files on the case. Hence, we find no support for the judge's conclusion that any reasonable counsel could step into such a case overnight and represent the plaintiff. It was inevitable, under the circumstances, that new counsel would request a continuance. Therefore, in view of the judge's opinion that he was bound by Judge Weisberg's ruling,[7] the only outcome of granting trial counsel's motion to withdraw was dismissal of the plaintiff's lawsuit. *See Imhoff v. Hammer,* 305 A.2d 325, 326 (Del.1973) (last-minute withdrawal of counsel may not deprive litigant of his day in court). If trial on the appointed day was deemed required by Judge Webber, leave to withdraw should have been denied and counsel should have been required to proceed in order to promote rather than frustrate the interests of fundamental justice. *See Urciolo v. Urciolo, supra,* 449 A.2d at 291; *Farkas v. Sadler,* 119 R.I. 35, 375 A.2d 960, 963 (1977).

That the client had failed to file a doctor's certificate as ordered by Judge Weisberg—one of the circumstances relied on by counsel in his motion to withdraw in addition to plaintiff's president's failure to return telephone calls and to arrive on time for trial preparation conferences—while hardly commendable and indicative of an uncooperativeness by the plaintiff's president that is apparent elsewhere in the record and not disputed by her on appeal,[8] it did not warrant granting trial counsel's motion to withdraw.[9] Even considered in conjunction with the president's refusal to respond to telephone calls and tardiness for trial preparation conferences, it does not provide an adequate basis for granting the motion. This was the second trial date for which appellee had to prepare. The case had a complex discovery history. Trial counsel had prepared for trial and had documented his efforts to contact his client and to prepare the president for trial. The client knew of Judge Weisberg's ruling and had no basis for thinking that Judge Webber would not adhere to it. That counsel had a difficult client is not the same as having a client who does not communicate at all, *see, e.g., Hancock, supra,* 472 A.2d at 869, nor does it show the kind of complete breakdown in a relationship that would have made proceeding to trial with trial counsel intolerable. The client's failures to cooperate with counsel relied on by Judge Webber appear of insufficient magnitude to permit counsel to withdraw on the second trial date where the inevitable result was the dismissal of the plaintiff's lawsuit, particularly in view of the longstanding relationship between counsel and the client.

In sum, although we recognize the fact-laden, discretionary call that is involved in the trial judge's ruling, counsel conceded that "it is not one big thing but ... an accumulation of things" that prompted his motion to withdraw, and we can find nothing in the record, either individually or in the aggregate, that justified a withdrawal which had the effect of terminating this lawsuit. Accordingly, we hold that Judge Webber abused his discretion in granting trial counsel's motion to withdraw on the

7. Although the law of the case doctrine is discretionary and does not preclude a reexamination of the issues affected by newly discovered facts, *see, e.g., Safir v. Dole,* 231 U.S.App.D.C. 63, 69 n. 3, 718 F.2d 475, 481 n. 3, *cert. denied,* 467 U.S. 1206, 104 S.Ct. 2389, 81 L.Ed.2d 347 (1983), we take no issue with Judge Webber's view since to have allowed plaintiff another continuance would have mocked the explicit warning given by Judge Weisberg a year and a half earlier.

8. There had been a past payment problem, but by the time trial counsel appeared before Judge Webber that was not one of counsel's objections to continuing in the case. The issue of attorneys fees was raised only in connection with plaintiff's president's concern about having to pay new counsel if trial counsel were permitted to withdraw.

9. When the client fails to comply with an order of the court, the proper course for counsel is to admonish the client concerning the importance of such obligations, not to cite the failure as grounds for withdrawal in the absence of any prejudice to counsel's ability to effectively represent the client.

second trial date when he could grant no continuance to the plaintiff to obtain new counsel, and remand the case with instructions to vacate the judgment of dismissal and to set a new trial date.

*Reversed and remanded with instructions.*