**Alan BANOV, Petitioner,**

v.

**The Honorable Henry H. KENNEDY, Jr., Respondent.**

**In re Alan BANOV, Appellant.**

**Nos. 95–SP–1164, 95–SP–1167.**

District of Columbia Court of Appeals.

Argued Dec. 19, 1995.

Decided May 1, 1997.

---

Allan Banov, pro se.

Gary A. Winters, Washington, DC, with whom Lawrence S. Robbins, was on the brief, for respondent.

Before STEADMAN * and RUIZ, Associate Judges, and BELSON, Senior Judge.

RUIZ, Associate Judge.

Alan Banov, the petitioner, seeks a writ of mandamus to the trial court directing it to permit Banov to withdraw from a case in which he claimed a conflict of interest as well as various irreconcilable differences with his client. Because we conclude that the trial court has exceeded its authority in denying Banov's renewed motion to withdraw from representation of his client, the mandamus relief Banov seeks is appropriate.

### I.

Mary Ann White–Pickering, who is deaf and does not speak, suffers from a mental impairment affecting her short-term memory that arose from an automobile accident some years ago. Banov agreed in 1992 to represent White–Pickering in a suit she brought against her former employer, Deafpride, Inc., alleging discrimination on the basis of her handicap. Deafpride is a non-profit organization devoted to the procurement and provision of services to members of the deaf community. The appellant claims, and no party disputes, that Deafpride is no longer financially viable and has virtually no assets from which to pay a monetary judgment.

The litigation against Deafpride began when White–Pickering first retained Banov to pursue administrative and legal remedies after she was discharged. Banov operates a small law office, with one associate, principally practicing employment law. The agreement that Banov reached with White–Pickering was that in exchange for Banov's bringing a lawsuit against Deafpride, White–Pickering would pay Banov a $5,000 retainer and $170 an hour for his services, with an annual increase of $10 in his hourly fee. Banov agreed to a payment schedule of $200

---

* Associate Judge King, who was on the panel that heard oral argument, subsequently recused from consideration of this case; Judge Steadman was drawn to replace Judge King.

per month. White–Pickering adhered to that schedule for almost three years, until January 1995, when conflicts began between Banov and White–Pickering.

The breakdown in the attorney-client relationship first arose around the question whether to accept a settlement offer that Deafpride made on January 12, 1995. At the time that Deafpride made its offer, a trial was scheduled for January 30 on the merits of White–Pickering's discrimination claims. The offer involved a cash settlement of $5,000, which, according to Deafpride, represented almost the sum total of its liquid assets. Because Deafpride had produced evidence that persuaded Banov that it was virtually insolvent, Banov strongly recommended that White–Pickering accept Deafpride's offer, and further offered to accept $2,500 of the Deafpride settlement as a full discharge of White–Pickering's obligations to Banov, which Banov claimed amounted to $38,000. The point that Banov sought to emphasize to White–Pickering, a point which he maintains in this court, is that because Deafpride was offering White–Pickering what was almost the total remainder of its assets, any recovery that could be obtained at trial could not exceed the amount then offered by Deafpride. Moreover, Banov calculated that trying the case would require an additional investment of at least $20,000 in legal fees.[2] Therefore, because not even the outstanding balance of White–Pickering's account with Banov could be met from a judgment even if White–Pickering prevailed, neither Banov nor White–Pickering would obtain any financial satisfaction as a result of trial.

On January 20, 1995, White–Pickering rejected Banov's advice and refused Deafpride's offer of settlement. Believing that White–Pickering's decision to decline the offer of settlement was irrational and would preclude any hope of even minimal financial recovery for White–Pickering or himself, Banov filed the first of what would eventually be three motions to withdraw as White–Pickering's attorney. On January 25, Judge Kennedy, the trial judge assigned to the White–Pickering case, denied Banov's first motion to withdraw.

On January 30, Judge Kennedy denied a joint motion for a continuance of the trial set for that day. Banov was not prepared for trial. Judge Kennedy expressed his opinion that Banov's failure to prepare for trial constituted a breach of Banov's obligations under the Rules of Professional Conduct, and further indicated his intention to report Banov to the Office of Bar Counsel for investigation. In any event, because no sign language interpreter was available to assist at trial, the case was continued and a new status date was set.

On February 2, Judge Kennedy reported Banov to the Office of Bar Counsel. While Bar Counsel's investigation was pending, White–Pickering, although agreeing with Judge Kennedy's assertion that Banov had acted unethically, equivocated regarding her desire to have Banov continue as her attorney. Because the trial court had not granted his motion to withdraw as counsel, Banov continued to perform the duties of an attorney, albeit in an atmosphere of increasing tension and mistrust.

That same month, February 1995, White–Pickering announced her intention to stop her monthly $200 payments to Banov. Banov has not received any compensation for his representation since January of 1995.

On February 24, 1995, Banov filed a second motion to withdraw, citing among other things a legal conflict of interest that had arisen between Banov and White–Pickering as a result of the investigation by Bar Counsel initiated by the trial court's complaint and the absence of White–Pickering's waiver of that conflict. In the alternative, the motion sought referral to alternative dispute resolution. At a status hearing that day, Judge Kennedy expressed his opinion that it was not in White–Pickering's interest that Banov represent her because of their conflicting interests. Judge Kennedy asked White–Pickering for her position regarding Banov's withdrawal, to which White–Pickering re-

---

**2.** According to Banov, the total amount that he would lose would be roughly equivalent to his average annual income.

sponded that while agreeing with Judge Kennedy that Banov should be investigated by Bar Counsel, White–Pickering feared that she could not afford to retain another attorney to pursue her case against Deafpride. Despite this concern, which he shared, Judge Kennedy permitted Banov to withdraw from the case, and set a new status date of March 17.

On March 16, however, Judge Kennedy *sua sponte* issued an order vacating his February 24 order permitting Banov to withdraw. Although Judge Kennedy recognized the "clear conflict" between Banov and his client, he wished to rethink the motion because he had failed to consider whether White–Pickering's interest in continuing with the litigation and the difficulty in obtaining substitute counsel under the circumstances would overcome the reasons for allowing Banov to withdraw. Seeking to address the conflict issue, Judge Kennedy ordered White–Pickering to indicate by March 23 her position regarding Banov's motion to withdraw, but further stated that assent to continued representation and waiver of the conflict of interest would be inferred from any failure by White–Pickering to respond to the court's order. White–Pickering opposed Banov's motion to withdraw, but did not respond to Judge Kennedy's specific request about the conflict. Instead, she identified a roster of allegations regarding purported misconduct on Banov's part, and requested that Banov secure at his own expense a sign-language interpreter to conduct any future communication with White–Pickering.[3] Banov responded that he could meet her conditions if she would meet his.

On April 6, 1995, White–Pickering and her husband filed for bankruptcy in the United States Bankruptcy Court for the Maryland District. In her petition for bankruptcy, White–Pickering sought to discharge her debt to Banov. Following the bankruptcy petition, in early May Banov supplemented his second motion to withdraw still pending before Judge Kennedy. In his supplement, Banov cited what he characterized as a continued lack of cooperation by White–Picker-

ing, White–Pickering's bankruptcy filing seeking that her debt to Banov be discharged, the absence of any prospect or promise of payment for his past or future services, and White–Pickering's practice of providing Judge Kennedy with all correspondence and communication between Banov and White–Pickering, which Banov felt compromised the confidential nature of the attorney-client relationship and his ability adequately to prosecute White–Pickering's case before Judge Kennedy. With respect to the bankruptcy filing, Banov argued that he had no contractual obligation to represent White–Pickering unless the bankruptcy trustee agreed to cure past defaults in payment and Banov agreed.

The final status conference in the case was held on May 19, 1995. Judge Kennedy orally denied Banov's second motion to withdraw without explanation. Judge Kennedy then set a trial date of September 5. Communications continued between Banov and White–Pickering; generally, these communications were in the nature of White–Pickering's request that Banov further investigate Deafpride's financial resources, and Banov relaying the information he gained.[4] In the Maryland bankruptcy court, Banov formally opposed White–Pickering's request to discharge her debt to Banov. On July 6, Banov filed a petition for a writ of mandamus with this court, urging the court to determine that Judge Kennedy had exceeded his authority in denying Banov's motions to withdraw. On July 27, Bar Counsel determined, after investigation, that the complaint against Banov initiated by Judge Kennedy's referral was not supported by clear and convincing evidence and issued a decision dismissing the complaint.

By August 4, 1995, Deafpride made a new but again unsuccessful settlement offer, purportedly offering to White–Pickering the bulk of its assets which by then had dwindled to $2,000. On that same date, White–Pickering initiated her own complaint against Banov with Bar Counsel, which Bar Counsel would later dismiss as duplicative of Judge

3. The record suggests that Banov has complied with this request.

4. The information received consistently revealed that Deafpride was impecunious.

Kennedy's complaint, which had already been dismissed. On August 11, Banov and White–Pickering met to prepare for the September 5 trial date. Banov continued to act as White–Pickering's attorney, rejecting Deafpride's settlement offer on her behalf and demanding additional documentation of Deafpride's insolvency. Banov's efforts to prepare for trial, which would include securing the presence of witnesses for White–Pickering, were hampered by White–Pickering's failure to advance to Banov any costs of the litigation, including witness fees, which under the District of Columbia Rules of Civil Procedure must be paid in advance.

On August 17, 1995, this court denied Banov's mandamus petition without prejudice to Banov's filing "a timely appeal from a properly entered order of the trial court denying Banov's motion to withdraw as counsel." On August 18, Banov filed his third motion with Judge Kennedy to permit him to withdraw, and requested that Judge Kennedy enter a final order on Banov's second motion for leave to withdraw as counsel. On August 31, Judge Kennedy denied Banov's motion in writing, an order which was entered on the civil docket on September 1, 1995. That same day, Banov renewed his petition for writ of mandamus to this court. On September 5, the parties began trial in the underlying litigation against Deafpride and selected a jury. Banov requested an emergency stay of the proceedings, which this court granted. On September 6, Banov noted an appeal from the trial court's order entered on September 1, 1995, denying his motion to withdraw.

Before us are Banov's appeal and petition for mandamus.

## II.

This case presents difficult issues concerning the lawful exercise of a trial court's authority to retain the appearance of an attorney representing a party who, it is agreed, has no constitutional or statutory right to that or any attorney's services. *See Mallard v. United States District Court,* 490 U.S. 296, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989). Banov agreed to represent White–Pickering, not on a contingent fee arrangement, but on a system of regular payments for work performed. It is not disputed that White–Pickering's refusal to perform her part of the bargain, which was to pay her bill in monthly installments, gave Banov a cause of action for breach of contract. It is also undisputed that, as a result of White–Pickering's bankruptcy filing, Banov has no contractual obligation to pursue White–Pickering's claim.[5] What is disputed is whether notwithstanding the absence of any constitutional or statutory right to counsel or contract for legal services between Banov and White–Pickering, the trial court may refuse to permit Banov the right to withdraw under the circumstances because of White–Pickering's objection. The question is further complicated by the issue of whether and when complaints filed with Bar Counsel, either by the client or by a judge acting out of concern for the client's interests, create a conflict of interest that either entitles the attorney to withdraw from the case[6] or, in the absence of a knowing

---

**5.** Banov would go further, arguing that he lacks authorization to proceed on behalf of the bankruptcy estate, which now controls the claim. See discussion *infra.*

**6.** Rule 1.16 of the Rules of Professional Conduct provides in pertinent part:

(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if;

(1) The representation will result in violation of the Rules of Professional Conduct or other law:

. . . .

(b) Except as stated in paragraph (c), a lawyer may withdraw from representing a client if withdrawal can be accomplished without ma-

terial adverse effect on the interests of the client; or if:

. . . .

(3) The client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;

(4) The representation will result in an unreasonable financial burden on the lawyer or obdurate or vexatious conduct on the part of the client has rendered the representation unreasonably difficult;

. . . .

(c) When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.

waiver from the client, compromises the client's entitlement to conflict-free representation.[7] *See* ABA Committee on Ethics & Professional Responsibility, Formal Opinion 384 (1994).[8]

■ For reasons that follow, we need not resolve the serious questions in this case concerning the propriety of requiring counsel to continue to represent a client in the midst of recognized conflicts of interest. Instead, we hold that the trial court exceeded its authority by continuing to require Banov to remain as counsel, even after changed circumstances brought about by White–Pickering's petition in bankruptcy court, as a matter of law, ended her contract with Banov and converted her from a real party in interest into a nominal party to the litigation. These changed circumstances eliminated White–Pickering's legal standing to object to Banov's withdrawal, which was the basis for Judge Kennedy's conclusion that White–Pickering should not proceed to trial unrepresented. On the record before us, it is clear that Banov is not required to continue, unpaid, to represent a hostile client, who no longer appears to have a cognizable interest in the underlying litigation.

### A.

■ Before turning to our analysis of Banov's claim on its merits, we consider whether the case before us should be treated as a proper interlocutory appeal, or whether the questions presented here are more appropriately posed in the form of a petition for a writ of mandamus. The difference is important because of the different standards that we apply to appeals and petitions for writs of mandamus: the review for abuse of discretion applicable to an appeal from denial of counsel's motion to withdraw, *see Atlantic Petroleum Corp. v. Jackson Oil Co.*, 572 A.2d 469, 472 (D.C.1990), is lower than the rigorous standard we apply to mandamus actions. *Yeager v. Greene*, 502 A.2d 980, 983 (D.C. 1985).

Banov first sought a writ of mandamus by petition to this court dated July 6, 1995, a petition which this court dismissed without prejudice. Noting that Judge Kennedy's order denying Banov's motion to withdraw had

Comment 11 states that "paragraph (c) is not intended to prevent the lawyer from challenging the tribunal's order as beyond its jurisdiction, arbitrary, or otherwise improper, while, in the interim, continuing the representation." This is the posture in which Banov's case comes before us.

7. Rule 1.7(b) of the Rules of Professional Conduct provides:

> Except as permitted [by a knowing waiver by the client], a lawyer shall not represent a client with respect to a matter if:
> ....
> (4) The lawyers's professional judgment on behalf of the client will be or reasonably may be adversely affected by ... the lawyer's own financial, business, property or personal interests.

8. The ABA Formal Opinion states:

> The filing of a complaint against the lawyer is not specifically mentioned as grounds for mandatory withdrawal. There may, however, be circumstances in which a lawyer must withdraw because continuing the representation after a complaint has been filed could "result in violation of the Rules of Professional Conduct or other law" under 1.16(a)(1). Specifically, the filing of a complaint against a lawyer concerning the lawyer's ongoing representation of the client may present conflict under

> Rule 1.7(b), in that the representation of the client may be materially limited by the lawyer's own interest in avoiding discipline. In such an instance, the lawyer against whom the complaint has been filed must consider whether he reasonably believes that the representation will not be adversely affected and seek his client's consent, after consultation, to continuing the representation. If the lawyer cannot reasonably conclude that the representation will not be adversely affected, if he is unwilling to make the necessary disclosure to the client, or if the client does not consent, withdrawal would be required.
> ....
> Although the Rules may permit withdrawal in given circumstances, a lawyer must nonetheless follow the rules of the forum court which may require a motion for leave to withdraw and a court order authorizing the withdrawal. The Model Rules expressly provide that a lawyer shall continue a representation notwithstanding grounds to withdraw under Rule 1.16(a) or (b), if ordered to do so by a court. Rule 1.16(c). Thus, a lawyer's attempt to withdraw—whether upon motion or notice—may be unsuccessful if a court determines that the interests of the administration of justice are better served by the lawyer's continuing to represent his client.

(Footnotes omitted.); *See Boudreau v. Carlisle*, 549 So.2d 1073, 1078 (Fla.Dist.Ct.App.1989).

never been entered on the civil docket as required for purposes of appeal by District of Columbia Court of Appeals Rule 4(a)(1), we directed the parties to investigate whether an interlocutory appeal from Judge Kennedy's order, if it were properly entered on the civil docket, was more appropriate than writ of mandamus. Judge Kennedy has taken the position that any interlocutory appeal by Banov is untimely. According to Judge Kennedy, an interlocutory appeal of the denial of the motion to withdraw would have been proper, but Banov should have noted it within thirty days of Judge Kennedy's May 19 denial of Banov's second motion to withdraw. Because no appeal was noted within that thirty-day period, counsel for Judge Kennedy characterizes Banov's petition to this court for a writ of mandamus as an effort to circumvent well-established jurisdictional limitations on noting appeals.

■ Although we disagree that the appeal was untimely,[9] the more difficult question is whether an appeal lies from the trial court's order in this case. Under D.C.Code § 11–721 and Rule 4(a)(1), this court can entertain appeals only from final trial court orders. Certain orders are considered "final" for the purpose of appellate jurisdiction if they qualify as collateral orders under the doctrine established in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). The collateral-order doctrine requires that such orders, in order to be immediately appealable, " 'conclusively determine the disputed question ... resolve an important issue completely separate from the merits of the action ... [and] be effectively

unreviewable on appeal from a final judgment.' " *Flanagan v. United States*, 465 U.S. 259, 265, 104 S.Ct. 1051, 1055, 79 L.Ed.2d 288 (1984) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978)); *Cobbledick v. United States*, 309 U.S. 323, 324–25, 60 S.Ct. 540, 541, 84 L.Ed. 783 (1940) (holding that departure from the final-judgment rule may only occur where "observance of it would practically defeat the right to any review at all"). Under the *Cohen* doctrine, Judge Kennedy's order might appear at first glance to be appealable on an interlocutory basis. The order denying Banov leave to withdraw conclusively determined the question of withdrawal, and is severable from and independent of the merits of the action against Deafpride. More importantly, Banov's claim that he is entitled to withdraw from this case cannot effectively be reviewed from final judgment because after White–Pickering has gone to trial, Banov will have provided the legal representation, with its attendant financial and time expense, that he seeks to avoid.

■ Nevertheless, a separate vexing question is presented because of the well-established rule of *Cobbledick, supra*, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783; *United States v. Harrod*, 428 A.2d 30 (D.C.1981) (en banc). Under the principle announced in *Cobbledick*, interlocutory appeals may not be taken from an order, such as the one involved here, that appears to be final simply because the party has "no alternative but to obey or be punished." *Cobbledick, supra*, 309 U.S. at 327, 60 S.Ct. at 542;[10] *Harrod*,

---

9. Banov's appeal notice was timely. D.C. Court of Appeals Rule 4(a)(1) provides that "[a] notice of appeal in a civil case shall be filed with the Clerk of the Superior Court within thirty days after entry of the judgment or order from which the appeal is taken." Although counsel for Judge Kennedy claims that it knows "of no authority ... that provides than an interlocutory order of the Superior Court is appealable only if it is rendered in writing," subsection (3) of D.C. Court of Appeals Rule 4 states that "[a] judgment or order is deemed to be entered" for the purposes of noting an appeal "when it is entered on the civil docket ... by the Clerk of the Superior Court."

Banov noted his appeal from Judge Kennedy's order denying his motion to withdraw on Sep-

tember 6, 1995, five days after Judge Kennedy's order of August 31 was entered on the civil docket on September 1. Judge Kennedy stated in his order that "As counsel well knows, the court has already issued [an order denying the withdrawal motion], a matter which counsel might have and perhaps should have registered with the District of Columbia Court of Appeals." Our review of the record, however, reveals no order *entered* earlier than September 1, 1995, counsel for Judge Kennedy has not identified any earlier order by date.

10. 28 U.S.C. § 1291 (1994), is the federal statute the Supreme Court interpreted in *Cobbledick* and its predecessor cases, *see, e.g., Alexander v. United States*, 201 U.S. 117, 120–22, 26 S.Ct. 356, 357–

*supra,* 428 A.2d at 42 (Nebeker, J., dissenting) ("There will be no opportunity short of the unseemly contempt proceedings for later review of the order."). The rule established in *Cobbledick* requiring contempt of an order before an appeal is allowed has survived the exception to the final-order requirement established in the later case of *Cohen. United States v. Ryan,* 402 U.S. 530, 532–33, 91 S.Ct. 1580, 1581–82, 29 L.Ed.2d 85 (1971); *Harrod, supra,* 428 A.2d at 32; *see id.* at 41 (Nebeker, J., dissenting) ("The majority here concedes that *Cohen* would be applicable in this situation were it not for the Supreme Court's decisions in [*Ryan,* 402 U.S. 530, 91 S.Ct. 1580; *Cobbledick,* 309 U.S. 323, 60 S.Ct. 540; and *Alexander,* 201 U.S. 117, 26 S.Ct. 356]."). The *Cobbledick* doctrine, therefore, could preclude appellate review of the court's order denying Banov's motions to withdraw as counsel, without the necessary contempt. *See A Sealed Case,* 890 F.2d 15, 16–17 (7th Cir.1989) (citing *Richardson–Merrell, Inc. v. Koller,* 472 U.S. 424, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985)); *Mallard, supra,* 490 U.S. at 308–09, 109 S.Ct. at 1822; *Harrod, supra,* 428 A.2d at 41 (Nebeker, J., dissenting) (noting that none of the cases rejecting interlocutory appeals for lack of jurisdiction "required justification under an inherent court power theory").

We do not, however, resolve these difficult issues because, for the reasons that follow, we consider that this case presents a situation in which mandamus is appropriate. *A Sealed Case, supra,* 890 F.2d at 16–17 (citing *Conticommodity Servs., Inc. v. Ragan,* 826 F.2d 600 (7th Cir.1987)); *Cf. Harrod, supra,* 428 A.2d at 39 (Gallagher, J., dissenting) (encouraging the court "not [to] get bogged down on a doctrinaire question of whether we have before us an appealable order ... [and] treat the appeal as a petition for a writ of mandamus").

58, 50 L.Ed. 686 (1906). The statute, which permits appeals only of "final decisions of district courts," is sufficiently similar to the statute in our jurisdiction, D.C.Code § 11–721(a)(1), which requires that only "final orders and judgments" be appealed, that this court has used interpretations of the federal statute in construing D.C. law. *Harrod, supra,* 428 A.2d at 31 n. 1; *see Frost v. Peoples Drug Store, Inc.,* 327 A.2d 810, 812 (D.C.1974).

## B.

We thus turn to the question whether Banov's claim can meet the strict requirements for the issuance of a writ of mandamus. It is well established that the writ of mandamus is an extraordinary remedy, available only in those few cases where a trial court has refused to exercise or has exceeded its jurisdiction. *Roche v. Evaporated Milk Ass'n,* 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943); *Yeager, supra,* 502 A.2d at 983. Mandamus " 'is not to be used as a substitute for appeal.' " *Harrod, supra,* 428 A.2d at 36 (Ferren, J., concurring) (quoting *Schlagenhauf v. Holder,* 379 U.S. 104, 110, 85 S.Ct. 234, 238, 13 L.Ed.2d 152 (1964)); *see Bankers Life & Cas. Co. v. Holland,* 346 U.S. 379, 74 S.Ct. 145, 98 L.Ed. 106 (1953). The requirements for issuance of a writ of mandamus are that the party seeking the writ must show that his right is "clear and indisputable," and that he "has no other adequate means to obtain relief." *Stebbins v. Stebbins,* 673 A.2d 184, 193 (D.C.1996) (citing *First Nat'l Bank of Waukesha v. Warren,* 796 F.2d 999, 1006 (7th Cir.1986)); *see also Turner v. Bayly,* 673 A.2d 596, 602 n. 12 (D.C.1996) (noting that writ discussed in *Stebbins* required petitioner to demonstrate probable "hardship[ ]" resulting from the inability to obtain mandamus relief).

We consider first whether Banov has demonstrated that the right he seeks to enforce on appeal is clear and indisputable. Ordinarily, the issue Banov has raised—whether he should be permitted to withdraw as White–Pickering's attorney in her suit against Deafpride—is one that is committed to the trial court's discretion. If so, it is not one that is normally susceptible to evaluation under the standard applicable to mandamus.[11] *Harrod, supra,* 428 A.2d at 36 (Fer-

11. Superior Court Rule of Civil Procedure 101(c)(4) provides:

The court may deny an attorney's motion for leave to withdraw if the withdrawal would unduly delay trial of the case, be unduly prejudicial to any party, or otherwise not be in the interests of justice.

ren, J., concurring) ("A court should grant the writ only 'when there is a "usurpation of judicial power" or the clear abuse of discretion.' ... Mandamus is not appropriate when 'the most that could be claimed is that the [lower] courts have erred in ruling on matters within their jurisdiction.' ") (quoting *Schlagenhauf, supra,* 379 U.S. at 110, 112, 85 S.Ct. at 238, 239; other citations omitted); *see Yeager, supra,* 502 A.2d at 984. We conclude, however, that this is not after all a case implicating the trial court's discretion, because an intervening event stripped the trial court of any discretion to require Banov to continue the representation.

▇▇▇ Banov sought several times to be permitted to withdraw from the representation of White–Pickering in her litigation against Deafpride. Several times, Judge Kennedy denied the motion, sometimes indicating that he had weighed the equities and determined that White–Pickering's personal interest in not proceeding with the suit unrepresented—she clearly could not afford to obtain the services of another attorney—outweighed Banov's interest in avoiding the serious personal and financial burden that this case had come to represent for him. We take no position regarding whether Judge Kennedy abused his discretion in having refused at each juncture, at one point reversing himself after having first allowed Banov's request for permission to withdraw, on the ground that White–Pickering should not be forced to proceed unrepresented as she would be unable to obtain other counsel. Abuse of discretion sufficient for reversal in an appeal is not enough to warrant mandamus; for mandamus to issue, a decision must qualify as "usurpation of judicial power." *Bankers Life, supra,* 346 U.S. at 383, 74 S.Ct. at 148; *Yeager, supra,* 502 A.2d at 983 ("[I]t has been noted that 'where a matter is committed to discretion it cannot be said that a litigant's right to a particular result is "clear and indisputable." ' ") (citations omitted).

In April 1995, however, after Judge Kennedy had denied the first of Banov's three motions to withdraw, there was a significant development that radically altered the legal basis for the request to withdraw before the trial court: White–Pickering and her hus-

band filed for bankruptcy in Maryland, requesting discharge of the debt for Banov's legal services. Banov opposed the discharge on June 30, 1995, arguing to the Bankruptcy Court that White–Pickering could not seek both to be relieved of the obligation to pay him and to request his continued representation.

On November 20, 1995, this court issued an order that stated that "the trial court and the parties are to proceed in accordance with *Smith v. Pollin,* 90 U.S.App.D.C. 178, 194 F.2d 349 (1952), if the trial court wishes to reconsider and now grant the motion it previously denied per order [dated] August 31, 1995; and are to inform this court promptly if the trial court grants any other motion or enters any other order that has the effect of mooting the issue presented by the pending petition and appeal." In a response dated November 29, 1995, Judge Kennedy's counsel stated that "Judge Kennedy hereby informs the Court that he does not wish to reconsider the motion he previously denied by his August 31 Order. Therefore, there is not now an order, and will not be an order issued by Judge Kennedy, that will moot this appeal."

On December 4, two weeks before oral argument, Banov filed a supplemental memorandum informing the court and Judge Kennedy of a Memorandum Decision recently issued by the Bankruptcy Court in Maryland. The Memorandum Decision, which appears to be in response to Banov's opposition to White–Pickering's motion to discharge her debt to Banov for legal services provides that:

> The retainer agreement between the plaintiff [Banov] and the debtor [White–Pickering] is an executory contract and subject to the provisions of 11 U.S.C. § 365. *Neither the debtor nor the trustee has assumed his executory contract,* most likely because of the fact that assumption of the contract requires that either the debtor or the trustee cure any existing default, compensate the other party to such contract on account of any pecuniary loss resulting from such default, and provide adequate assurance of future performance.
>
> The trustee has not sought to employ counsel to prosecute the District of Colum-

bia case. *No counsel is authorized to proceed on behalf of the estate in that case.* (No. 95–11900PM, Nov. 17, 1995) (emphasis added).

Banov argued, based on the highlighted language at the end of the quoted portion from the Bankruptcy Court's Memorandum Decision, that because he "has no legal authority" to represent White–Pickering, Judge Kennedy must grant Banov's motion to withdraw. In a response dated December 18, 1995, Judge Kennedy's counsel responded that Banov's reading of the Memorandum Decision is overly broad. According to Judge Kennedy's counsel, the Memorandum Decision does not prohibit Banov from representing White–Pickering. Rather, the fact that there is no longer any contract between Banov and White–Pickering, "makes it less likely that [Banov] will be paid under the terms of the original retainer agreement for his services." As White–Pickering had not been paying Banov the agreed-upon fee in any event, a fact of which Judge Kennedy was aware when he denied Banov's motions to withdraw, the Memorandum Decision, therefore, adds nothing new.[12]

These arguments miss the legal significance of the bankruptcy to our consideration, whether we consider the case as an appeal or as petition for mandamus. Judge Kennedy initially granted Banov's motion to withdraw and subsequently reversed himself and denied it because of White–Pickering's interest in continuing with the litigation represented by counsel. The bankruptcy petition and the

Bankruptcy Court's Memorandum Decision brought to the attention of the trial court relevant factors that, for reasons discussed below, eliminated the consideration upon which Judge Kennedy based his decision to require that Banov continue representing White–Pickering. In the absence of that consideration, the logic of Judge Kennedy's orders dictates that counsel should be allowed to withdraw.

■ This case presents an even more compelling reason for appellate intervention, however, because in this case Judge Kennedy had no option but to grant Banov's request to withdraw.[13] This court has held that, absent abandonment by the trustee of the claim in question, a debtor in bankruptcy has no standing to bring or maintain an action that belongs to the trustee as a result of the bankruptcy petition.[14] *Rothberg v. Quadrangle Dev. Corp.*, 646 A.2d 309, 312–13 (D.C. 1994). Moreover, as stated in the Bankruptcy Court's Memorandum Decision, under general principles of bankruptcy law a debtor in bankruptcy's contractual relationship with a lawyer ends once a bankruptcy petition is filed and the trustee decides not to assume the lawyer's executory contract for legal services. *See In re Taylor,* 91 B.R. 302, 312 (Bankr.D.N.J.1988). Applying these two principles to the present case, we conclude that on the record before us, as a result of the bankruptcy filing not only is Banov under no contractual obligation to White–Pickering, but White–Pickering's objections to Banov's

12. At oral argument, when asked if a remand would be appropriate to consider the effect of the bankruptcy petition and the Bankruptcy Court's Memorandum Decision on the denial of Banov's motion to withdraw, counsel for Judge Kennedy reiterated that the bankruptcy is irrelevant and that Judge Kennedy would not reconsider the motion to withdraw in light of this subsequent event.

13. Thus, we do not resolve the question whether being held in contempt and noting an appeal from such a final order under abuse of discretion standard would qualify as an "adequate" means to obtain relief that would deprive Banov of his entitlement to the writ. *See People's Counsel of the District of Columbia v. Public Serv. Comm'n,* 414 A.2d 516, 518 (D.C.1980). *Harrod,* whose dissenters proposed mandamus as an alternative means of obtaining relief for the witness in that

case who resisted an order to undergo a psychiatric examination, 428 A.2d at 39 (Gallagher, J., dissenting), did not need to resolve the tension between the *Cobbledick* and mandamus doctrines on this point, because the witness in that case had not petitioned this court for a writ of mandamus. *Id.* at 35 (Ferren, J., concurring). Instead, the government sought only an interlocutory appeal on the witness's behalf. *Id.* at 30. Banov has sought both to appeal and to petition for a writ of mandamus.

14. We do not address the implications of a bankruptcy filing on the procedures set out in Superior Court Civil Rule 25(c) for substitution of parties in the event of a transfer of interest, or on any other rule of the Superior Court that might come into play when a named party's interest becomes nominal.

withdrawal have no bearing on the consideration of Banov's motion to withdraw because White–Pickering no longer has a cognizable legal interest in the underlying litigation against Deafpride.[15]

Faced with a virtually identical situation, the United States Court of Appeals for the Seventh Circuit ordered the trial court to release counsel from representation of its client. *Conticommodity Servs., Inc. v. Ragan,* 826 F.2d 600 (7th Cir.1987). A Chicago law firm represented David Ragan in one part of a multimillion dollar suit to which he was a party, but withdrew for reasons not presently relevant. While this litigation was still pending, Ragan filed for bankruptcy and sought to have the firm represent the bankrupt estate in the underlying litigation against Conticommodity, a request which the bankruptcy court rejected. *Id.* at 601. Nevertheless, the district court judge presiding over the Conticommodity litigation thought that "it would be unfair if Ragan were not represented in the litigation," and notwithstanding the fact that a trustee had by then been appointed to represent Ragan's bankrupt estate, appointed the law firm to represent Ragan in the litigation. *Id.* The Seventh Circuit issued a writ of mandamus ordering the district court to allow the law firm to withdraw, noting that the trial judge "exceeded the lawful bounds of his power when he ordered a law firm to represent a nominal party to litigation, when the real party was a trustee in a bankruptcy proceeding pending in another court." *Id.* at 603.

Similarly, we conclude that mandamus would be the appropriate form of relief in this case. Writs of mandamus, however, are issued with extreme caution. As in our prior cases, we deny the petition for writ of mandamus without prejudice because we are confident that the trial court will comply with the substance of this opinion and will promptly grant Banov's motion to withdraw

---

**15.** We have not been informed of any developments in the bankruptcy proceeding that would alter our conclusion that White–Pickering is a nominal party to the litigation. We assume

as counsel. *See, e.g., Turner v. Bayly, supra,* 673 A.2d at 602 (citing cases).

*So ordered.*

counsel would have informed us of relevant developments in the bankruptcy case during the pendency of this matter.